P.J.'S CONCRETE PUMPING SERVICE, INC., Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. NEXTEL WEST CORPORATION, Defendant-Appellant.

Second District No. 2—02—1219

Opinion filed January 27, 2004.—Rehearing denied February 26, 2004.

Terry F. Moritz, Frederick H. Cohen, David J. Chizewer, and James P. Madigan, all of Goldberg, Kohn, Bell, Black, Rosenblum & Moritz, of Chicago, for appellant.

Malik R. Diab, Phillip A. Bock, Robert M. Hatch, John R. O'Donnell, and Thomas G. Macey, all of Diab, Macey & Bock, of Chicago, and Brian J. Wanca and Michael A. Shlau, both of Anderson & Wanca, of Rolling Meadows, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

# I. INTRODUCTION

Plaintiff, P.J.'s Concrete Pumping Service, Inc., filed a class action alleging that, by collecting, on behalf of municipalities, taxes from customers located in unincorporated areas, defendant, Nextel West Corporation, violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)) and was guilty of common-law fraud. The trial court certified a class of defendant's customers residing in Illinois and 16 other states. The trial court denied defendant's motion for reconsideration but certified the following question for review pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)): "Did the Illinois Supreme Court decision in *Oliveira v. Amoco Oil Co.*, [201 Ill. 2d 134 (2002)], change the pleading requirements for misrepresentation claims in a class action suit under the Illinois Consumer Fraud Act to require an allegation of actual deception by each individual class member?" We affirm the order certifying the class, answer the certified question in the negative, and remand the cause.

## II. BACKGROUND

Plaintiff's complaint alleges the following relevant facts. Defendant provides cellular telephone service, and plaintiff was defendant's customer. Plaintiff's place of business was located in unincorporated Lake County, just outside the Barrington village limits. Defendant was authorized to collect taxes on behalf of the municipalities that imposed them. The taxes were based on the revenues defendant generated from the cellular service it provided to customers residing within the municipalities that imposed them. If the zip code the customer provided when signing up for service with defendant placed the customer within a zip code area including a municipality authorizing taxes, then defendant would assess such taxes against the customer. Plaintiff's monthly bills included assessments for "City-Utility Tax" and "City-Gross Receipts Tax."

Plaintiff's complaint defined the class as "[a]ll persons who paid Defendant local, municipal, gross receipts or substantially similar taxes and do not live or have a place of business within a municipality that authorizes defendant to assess the taxes." Plaintiff alleged that defendant engaged in deceptive acts and practices by collecting these taxes even though it knew at the time that the customers may not live in municipalities that authorized defendant to assess the taxes. Defendant even continued to collect the taxes from those customers who informed defendant that they lived in unincorporated areas or in municipalities that did not authorize such taxes. Defendant intended that plaintiff and the other class members rely on its representations that the taxes were owed and that defendant was authorized to collect them. Defendant's representations and omissions injured plaintiff and the other class members by causing them to pay defendant money they otherwise would not have paid.

The complaint alleged that defendant violated the Consumer Fraud Act and similar acts of the other states in which defendant did business. Also, the complaint sought recovery for common-law fraud and a declaration that defendant cannot assess local taxes against its customers who do not live in municipalities that authorize defendant to collect the taxes.

Defendant moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2000)). Defendant argued that the Village of Barrington was the proper defendant and that the voluntary payment doctrine barred plaintiff's claims. The trial court denied the motion. Defendant raised four affirmative defenses: (1) the voluntary payment doctrine barred plaintiff's claims; (2) it was not the proper defendant; (3) it could not be liable because it merely relied on the Barrington address plaintiff

provided; and (4) plaintiff failed to comply with the subscriber agreement, which provided that, if a customer disputed a charge, the customer must provide a written explanation within 45 days of the disputed invoice.

Discovery revealed that plaintiff became defendant's customer in February 1997. In 1999, plaintiff moved to the location that is the subject of this suit. Plaintiff knew that its property did not lie within any municipality. The address plaintiff provided to defendant stated that the property was in Barrington. Shortly after plaintiff purchased the property, it sent a letter to the Village of Lake Barrington asking that municipality to annex plaintiff's property. The Village of Lake Barrington replied that it was not interested in annexing the property.

In January 2000, defendant began collecting Barrington taxes from plaintiff. Plaintiff paid its monthly bills, including the tax assessments, without protest. Around January 2001, Mary Lareau, one of plaintiff's employees and the wife of plaintiff's president, first noticed the municipal tax assessments and believed that defendant had made a mistake. Ms. Lareau called defendant, and a customer service representative informed her that defendant collected municipal taxes based on zip codes and that plaintiff had to pay the tax. After speaking to the customer service representative, Ms. Lareau believed that the assessments were proper.

Arguing against class certification, defendant raised several contentions. According to defendant, several individual factual issues predominated over the common issues. The issues that would have to be addressed for each class member were reliance and proximate cause, the voluntary payment doctrine, and where each customer received its bills in relation to a municipal boundary. Also, defendant argued that, because the class action implicated the tax ordinances of over 1,000 local governments and the laws of 17 states, the individual legal issues predominated. Moreover, according to defendant, plaintiff was an inadequate class representative because it was subject to unique defenses about whether its own misstatements induced defendant to include line items for Barrington taxes on plaintiff's bills. Finally, defendant asserted that class certification was inappropriate because it would preclude defendant from filing third-party claims against the out-of-state municipalities that ultimately received the taxes defendant collected from customers.

On May 18, 2002, the trial court certified the class as defined in the complaint. On September 21, 2002, defendant asked the court to reconsider the certification order or alternatively to certify questions for an interlocutory appeal pursuant to Rule 308(a). Defendant argued that *Oliveira*, decided on June 20, 2002, impliedly overruled several of

the cases upon which plaintiff, and presumably the trial court, relied to certify the class. *Oliveira* held that a plaintiff alleging a violation of the Consumer Fraud Act must prove that he or she was actually deceived by the defendant's conduct. *Oliveira*, 201 Ill. 2d at 155. Defendant argued that, because plaintiff was sophisticated enough to discover that the tax assessments were incorrect but not zealous enough to refuse to pay them, it could not prove that defendant's conduct deceived it. Defendant asserted further that the class members likely had different levels of knowledge about the correctness of the assessments and therefore that class certification was inappropriate.

Defendant asked the trial court to certify the following questions in the event the court denied the motion to reconsider:

> "(a) Whether *Oliveira* allows a [C]onsumer [F]raud [A]ct class action to proceed here, given the fact that the named plaintiff's testimony clearly demonstrates that the question of 'actual deception' will require a different analysis for each class member; and

> (b) Whether a nation-wide [*sic*] class action (as opposed to an action limited to Illinois customers) is proper given the standards articulated in *Oliveira*."

The trial court found that there was substantial ground for difference of opinion about (1) "whether the Class should be certified, in light of *Oliveira* and its actual deception standard for proximate causation"; (2) "how *Oliveira* affects class certification generally and pleading requirements specifically"; and (3) "whether a nationwide consumer fraud class action may proceed here given *Oliveira*." Accordingly, the court certified the following question: "Did [*Oliveira*] change the pleading requirements for misrepresentation claims in a class action suit under the Illinois Consumer Fraud Act to require an allegation of actual deception by each individual class member?"

This court denied defendant's application for leave to appeal. Defendant petitioned for leave to appeal to the supreme court. The supreme court entered a supervisory order vacating this court's denial of leave to appeal and directing us to consider the certified question. Pursuant to the supervisory order, this court recalled its mandate and reinstated defendant's appeal.

## III. DISCUSSION

■ Initially, we note that plaintiff complains that defendant's brief is deficient in several respects. After reviewing defendant's brief, we conclude that only two issues warrant comment. First, defendant's statement of facts does contain some statements bordering on legal argument. See 210 Ill. 2d R. 341(e)(6) (the appellant's brief shall contain a statement of "the facts necessary to an understanding of the

case, stated accurately and fairly without argument or comment"). For example, on page nine of its brief, defendant states that "[t]he invoice did not deceive [plaintiff] into believing that it was liable for a city tax." We have reviewed the record and will disregard any parts of defendant's statement of facts that are unsupported by the record. Second, we agree with plaintiff that defendant improperly relies on *Abad v. The Reader's Digest Ass'n*, No. 1—01—2010 (2003) (unpublished order under Supreme Court Rule 23), filed on May 9, 2003. Although a motion to publish in *Abad* was pending when defendant filed its brief, the court has since denied that motion. We note that, in September 2003, the *Abad* court withdrew the Rule 23 order and filed a modified Rule 23 order. Therefore, the decision in *Abad* remains unpublished and has no precedential value. 166 Ill. 2d R. 23(e). Accordingly, we will not consider it.

### A. Scope of Rule 308 Interlocutory Appeal

On appeal, defendant asks that we answer the certified question in the affirmative and decertify the class. We note that our supreme court recently amended Supreme Court Rule 306(a) to provide for permissive interlocutory appeals from orders granting or denying certification of a class action. 210 Ill. 2d R. 306(a)(8). The amendment did not become effective, however, until after the proceedings giving rise to this appeal.

■ This appeal is from a question certified pursuant to Rule 308(a). When a trial court enters an interlocutory order not otherwise appealable and finds that the order involves a question of law about which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the termination of the litigation, then the court shall so state in writing and identify the question of law involved. 155 Ill. 2d R. 308(a). The parties dispute the scope of this appeal. Defendant asserts that, to answer the certified question, we must address the propriety of the order certifying the class. Plaintiff argues that we may answer only the question the trial court certified.

■ Generally, the scope of review in an interlocutory appeal brought under Rule 308 is strictly limited to the certified question. *Reich v. Gendreau*, 308 Ill. App. 3d 825, 828 (1999). Thus, our task is to answer the certified question rather than to rule on the propriety of any underlying order. *Danner v. Norfolk & Western Ry. Co.*, 271 Ill. App. 3d 598, 601 (1995). In the interests of judicial economy and reaching an equitable result, however, a reviewing court may go beyond the certified question and consider the appropriateness of the

order giving rise to the appeal. *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995); *City of Waukegan v. Environmental Protection Agency*, 339 Ill. App. 3d 963, 972 (2003).

It is not uncommon for a reviewing court in class action to go beyond the certified question and address the propriety of the decision to certify a class action. *Arriola v. Time Insurance Co.*, 323 Ill. App. 3d 138, 143 (2001); *Gordon v. Boden*, 224 Ill. App. 3d 195, 199 (1991). In *Arriola* and *Gordon*, the reviewing courts addressed the propriety of the trial courts' class certification orders in addition to the certified questions because the reviewing courts concluded that they could not " 'neatly compartmentalize and independently resolve one issue and not the other.' " *Arriola*, 323 Ill. App. 3d at 143, quoting *Gordon*, 224 Ill. App. 3d at 199.

Similarly, the propriety of the class certification here is intertwined with the certified question. As the trial court found when it certified the question, there is substantial ground for difference of opinion about whether a multistate class action may proceed here in light of the "actual deception" requirement stated in *Oliveira*. Also, multistate class actions place a tremendous burden on the state's court system and taxpayers and have significant consequences for absent class members who would be bound by an Illinois judgment. *Arriola*, 323 Ill. App. 3d at 143. Thus, our supreme court recognized long ago that Rule 308 is a means of reviewing an order granting class certification at an early stage of the litigation. *Frank v. Teachers Insurance & Annuity Ass'n of America*, 71 Ill. 2d 583, 590-91 (1978); see also *Gordon*, 224 Ill. App. 3d at 198.

■ For these reasons, in addition to answering the certified question, we will address whether the trial court properly certified the class action. We note that, although the certified question refers to pleading requirements, we do not believe that it is appropriate to review the trial court's order denying the motion to dismiss the complaint. It was the order certifying the class action, not the denial of the motion to dismiss, that gave rise to this interlocutory appeal. Therefore, we express no opinion here about the substantive issues raised in the motion to dismiss or the affirmative defenses.

### B. Certified Question—Consumer Fraud Act

■ The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). The Consumer Fraud Act describes unfair or deceptive practices as:

"including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [(815 ILCS 510/2 (West 2002))] *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2002).

■ Any person who suffers actual damage as a result of another person's violation of the Consumer Fraud Act may bring an action against the other person. 815 ILCS 505/10a(a) (West 2002). The elements of a claim under the Consumer Fraud Act are (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998).

In *Oliveira*, the plaintiff filed a class action alleging that the defendant violated the Consumer Fraud Act by falsely representing in a series of advertisements that the use of its premium gasolines would improve engine performance and benefit the environment. The plaintiff alleged that he purchased the defendant's premium gasoline and suffered actual damage as a result of the allegedly deceptive advertisements. The plaintiff did not allege, however, that he saw, heard, or read any of the advertisements or that the advertisements deceived him or induced him to buy the gasoline. Instead, the plaintiff advanced a "market theory" of causation and alleged that the advertisements created an artificially inflated demand and price for the gasoline. The trial court found that the "market theory" was not sufficient to allege causation under the Consumer Fraud Act and accordingly dismissed the complaint.

The supreme court in *Oliveira* concluded that *Zekman* controlled. In *Zekman*, the plaintiff received from a direct mail marketer a series of allegedly deceptive mailings stating that the plaintiff had won a prize. The mailings listed as prizes large cash awards as well as discount coupons for various products or services. The mailings stated that the recipient could respond by mail or by calling a "900" number and listed the odds of winning the prizes. They urged recipients to call the "900" number in order to claim their prizes immediately. By calling, the recipients incurred telephone charges between $8 and $10. The plaintiff called the "900" number several times and each time won only discount coupons. During his deposition, the plaintiff acknowledged that he understood that he could respond by mail and that he would incur charges by calling the "900" number.

The *Zekman* court held that a summary judgment for the defendants was proper because the plaintiff understood the requirements and costs of the direct marketer's program. *Zekman*, 182 Ill. 2d at 375. According to the court, "we do not believe that there remains a genuine issue of material fact whether the alleged violations of the [Consumer Fraud] Act by [the defendants] proximately caused [the plaintiff's] damage, for plaintiff's testimony demonstrates that he was not deceived by [the defendants'] actions." *Zekman*, 182 Ill. 2d at 376.

The *Oliveira* court stated that *"Zekman* makes clear that, to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the [Consumer Fraud] Act, a plaintiff must allege that he was, in some manner, deceived." *Oliveira*, 201 Ill. 2d at 155. The court concluded that the complaint before it was deficient in the same manner as the complaint in *Zekman. Oliveira*, 201 Ill. 2d at 154. Because the plaintiff did not allege that he saw, heard, or read any of the defendant's advertisements, he could not allege that he believed that he was buying gasoline that benefitted the environment or improved engine performance. *Oliveira*, 201 Ill. 2d at 155.

The court observed that, under the plaintiff's "market theory" of causation, purchasers of the defendant's premium gasoline who saw the defendant's advertisements but never believed them would have valid claims under the Consumer Fraud Act. Likewise, purchasers who never saw the advertisements and thus were not deceived also would have valid claims. Such results plainly would have been at odds with *Zekman. Oliveira*, 201 Ill. 2d at 155.

■ It has been recognized that a plaintiff bringing a class action suit need only allege a viable individual cause of action, indicate that the claim is being brought as a class action, and include factual allegations broad enough to establish the possible existence of a class action. *Weiss v. Waterhouse Securities, Inc.*, 335 Ill. App. 3d 875, 883 (2002), *appeal allowed*, 203 Ill. 2d 571 (2003); see also *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 711 (1981). We agree with this statement. *Weiss* relied on *Arriola v. Time Insurance Co.*, 296 Ill. App. 3d 303, 307 (1998), which stated that "[t]he class action statute [(735 ILCS 5/2—801 (West 1994))] makes no reference to any requirement that the facts establishing the class action prerequisites be pleaded." Class certification issues are typically factual and should be decided with the benefit of discovery. *Weiss*, 335 Ill. App. 3d at 884.

After reviewing *Oliveira*, we do not believe that it changed the pleading requirements for class actions under the Consumer Fraud Act. Initially, we note that *Oliveira* did not address class certification. Because the named plaintiff's complaint was dismissed, the class

certification issue was moot. *Oliveira*, 201 Ill. 2d at 156-57. Thus, the decision did not expressly establish any requirements governing class actions under the Consumer Fraud Act. Moreover, *Oliveira* did not announce any new rule of law. It merely relied on *Zekman*, which in turn relied on established legal principles. See *Zekman*, 182 Ill. 2d at 373. There is nothing in *Oliveira* that we read as imposing a pleading requirement that did not exist previously.

■ Because *Oliveira* did not purport to change the nature of Consumer Fraud Act claims, we do not believe that it did anything to affect the viability of class actions based on the Consumer Fraud Act. Indeed, because *Oliveira* did not directly involve class action principles, it is difficult to say that it imposed any requirement that would make it more difficult for a class action based on the Consumer Fraud Act to proceed. A multistate class action based on the Consumer Fraud Act is not a novelty in Illinois. See *Miner v. Gillette Co.*, 87 Ill. 2d 7 (1981); *Gordon*, 224 Ill. App. 3d at 206. *Oliveira* merely held that the "market theory," which was premised on the assumption that neither the plaintiff nor anyone in the proposed class actually was deceived, could not establish the proximate causation element of a claim under the Consumer Fraud Act. This cause is not based on such an assumption. Instead, it involves a uniform billing practice that, from what we can tell at this stage of the litigation, has at least the potential to deceive customers. Moreover, we believe that our reasoning is consistent with the mandate that the Consumer Fraud Act be construed liberally to effectuate its purpose. See *Robinson*, 201 Ill. 2d at 417. Therefore, our answer to the certified question is "no."

## C. Class Certification

■ To certify a class action, the trial court must find that (1) the class is so numerous that joining all members is impracticable; (2) there are questions of fact or law common to the class, and the common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) the class action is an appropriate method for fairly and efficiently adjudicating the controversy. 735 ILCS 5/2—801 (West 2002). Whether to certify a class action is a matter within the sound discretion of the trial court, and we will reverse the trial court's decision only upon a showing that the court clearly abused its discretion or applied impermissible legal criteria. *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 942 (2001).

Defendant does not dispute that the class is so numerous that it would be impractical to join all members. Defendant argues, however,

that the class cannot be certified because individual issues regarding actual deception predominate. We disagree. The trial court reasonably could have found here that there are common questions of law or fact that predominate over questions affecting only individual members. It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class. *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 548 (2003). The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members. *Avery v. State Farm Mutual Automobile Insurance Co.*, 321 Ill. App. 3d 269, 280 (2001), *appeal allowed*, 201 Ill. 2d 560 (2002).

The primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members. The propriety of such a uniform practice is amenable to being resolved in a class action. Once the trial court finds that a predominating question of fact or law exists, the presence of individual questions does not necessarily defeat class certification. *Kennedy v. Commercial Carriers, Inc.*, 294 Ill. App. 3d 34, 39 (1997). Where it appears that the common issue is dominant and pervasive, something more than the assertion of minor hypothetical variations is required to prevent class certification. *Miner*, 87 Ill. 2d at 19-20. Just as the class action in *Miner* was predicated on thousands of essentially identical transactions founded upon the language of the defendant's promotional offer (*Miner*, 87 Ill. 2d at 19), the action here is founded upon an essentially identical entry appearing on the class members' bills. The trial court reasonably could have found that individual class members' hypothetical reactions to the disputed charges were not sufficient to prevent the class action from going forward.

Also, that some class members reside outside Illinois or that the laws of different states may apply to the transactions at issue does not ordinarily prevent certification of the class. *Avery*, 321 Ill. App. 3d at 281. Because 50-state class actions are not uncommon in Illinois (see, *e.g.*, *Clark*, 343 Ill. App. 3d at 547-48), that the laws of 17 states are potentially implicated here is not necessarily problematic. The trial court may simply divide the class into subclasses. *Gordon*, 224 Ill. App. 3d at 202. Defendant argues that the class action here would be unmanageable because it implicates the tax ordinances of over 1,000 local taxing bodies. The ordinances do not directly affect the substantive claims here, however. If the class members do not reside in municipalities authorizing a tax, then arguably no tax ordinance applies to them. It appears that the ordinances are relevant primarily to identify the class members. In any event, this is a hypothetical problem

and is not a sufficient basis to deny certification of an otherwise proper class action. *Gordon*, 224 Ill. App. 3d at 202. If, during a later stage of the litigation, the subclassification becomes unmanageable, the trial court always has the option to set aside the class certification or a portion of it. *Gordon*, 224 Ill. App. 3d at 202.

■ The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Avery*, 321 Ill. App. 3d at 285. The test to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined. *Miner*, 87 Ill. 2d at 14. Also, the named plaintiff's interest must not appear collusive. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 338-39 (1977). Here, it is apparent that plaintiff's interests are aligned with those of the class, and the record amply reveals plaintiff's desire to prosecute the claim vigorously on behalf of itself and the class members.

Defendant argues that plaintiff will be subject to unique defenses regarding proximate cause that impede its ability to represent the class. According to defendant, the deposition testimony reveals that the cellular bills did not actually deceive plaintiff and that plaintiff provided inaccurate information about its location in an unincorporated area. The assertion of individual defenses does not necessarily defeat a plaintiff's ability to represent the class adequately, however. *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1988). The trial court apparently found that a question of fact existed on these issues. Plaintiff paid the bills for some time before questioning them. Even after questioning the bills, plaintiff continued to believe that it owed the tax. The proximate causation issues that defendant raises against plaintiff are really not materially different from the issues affecting the entire class. Accordingly, it is not readily apparent that the presence of these potential defenses will interfere with plaintiff's ability to prosecute the claim on behalf of the class.

■ In deciding whether a class action is an appropriate method to adjudicate the controversy fairly and efficiently, a court considers whether a class action can best secure economies of time, effort, and expense or accomplish the other ends of equity and justice that class actions seek to obtain. *Clark*, 343 Ill. App. 3d at 552. Our discussion about the first three elements of section 2—801 of the Code makes it evident that the trial court reasonably could have concluded that the fourth element was fulfilled. *Gordon*, 224 Ill. App. 3d at 204. The consumer class action is an inviting procedure to address alleged frauds that, like here, cause small damages to large groups. *Gordon*, 224 Ill. App. 3d at 204.

Defendant argues that a class action is inappropriate here because the Illinois courts do not have the power to regulate the tax collection procedures in jurisdictions outside Illinois. As we stated earlier, however, plaintiff's claim is not about the tax ordinances of the local governments on whose behalf defendant collected the taxes. Instead, this claim is about defendant's billing practice of relying only on a customer's zip code to determine whether the customer owed a tax.

Finally, defendant contends that, because it will not be able to implead the out-of-state municipalities to which defendant remitted the taxes, the trial court should have at least limited the class to Illinois residents. At this point, there is no indication of how many out-of-state municipalities may have received tax revenue from nonresidents, as Barrington allegedly has. Moreover, defendant presumably would be able to seek redress in the states in which the affected municipalities are located. Accordingly, we cannot say that the trial court was wrong to reject this concern as a basis for denying class certification at this stage of the litigation. After reviewing the elements of section 2—801 of the Code, we conclude that the trial court did not abuse its discretion in certifying the class action.

## IV. CONCLUSION

We affirm the judgment of the circuit court of Lake County certifying the class action, answer the certified question in the negative, and remand the cause.

Affirmed; certified question answered; cause remanded.

BOWMAN and GILLERAN JOHNSON, JJ., concur.