No. 3--05--0629

_____

filed July 20, 2006
APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

_____

|  |  |  |
|---|---|---|
| In re ESTATE OF | ) | Appeal from the Circuit Court |
|  | ) | for the 14th Judicial Circuit, |
| CHARLOTTE J. WILLIAMS, | ) | Rock Island County, Illinois |
|  | ) |  |
| Deceased | ) |  |
|  | ) |  |
| (Wesley Nutt, Special Administrator, | ) |  |
|  | ) | 03--P--358 |
| Petitioner-Appellee, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Wells Fargo Bank, N.A.,Trustee of | ) |  |
| the Don E. Williams Trust dated | ) | Honorable Mark A. VandeWiele, |
| May 1, 1985, | ) | Judge Presiding. |
|  | ) |  |
| Respondent-Appellant). | ) |  |

_____

JUSTICE McDADE delivered the opinion of the court:

_____

This appeal presents a question certified pursuant to Illinois Supreme Court Rule 308(a) (155 Ill. 2d R. 308). The question of law certified by the trial court is whether the language found in section 4 of Charlotte J. Williams's will is ambiguous regarding reimbursement for and apportionment of expenses of administration and death taxes among recipients of probate and nonprobate assets. Because the will is silent as to the issue of what is to occur when the

residuary estate is insufficient to cover the expenses of administration and death taxes, we answer this question in the affirmative. We reject respondent's claim that the will's language, "pay from the residue of my estate * * * without apportionment or reimbursement," somehow clarifies any ambiguity concerning Charlotte's intent as to equitable apportionment. Instead, this language merely shows an intent to prohibit the beneficiary of the residue from seeking apportionment from the beneficiaries of the probate and nonprobate assets.

BACKGROUND

Charlotte J. Williams died testate on September 5, 2003. Her husband, Don E. Williams, predeceased her, passing on October 9, 1997. Before his death, Don created a trust reserving a life estate in favor of Charlotte and granting her the power to appoint the trust corpus. By giving this power to Charlotte, the assets of the trust did not incur federal estate tax at Don's death, but were included as part of the gross estate for federal tax purposes at the time of Charlotte's death. The trust assets that were included in the estate amounted to $3,674,711. These assets constitute nonprobate assets. Approximately $1,400,000 of that amount passed to a charitable beneficiary and therefore did not produce death taxes. The remaining $2,203,000 created nearly half of the death taxes incurred by the estate.

Upon her death, Charlotte's will was admitted to probate. The will made a general bequest of $1,250,000 and a specific bequest of her personal residence to petitioner, Wesley Nutt. These bequests constitute probate assets. After all remaining bequests were discharged, the will gave the residue of her estate to the Don E. And Charlotte Williams Charitable Foundation. The residue totaled $792,316. Section four of the will stated that the executor should pay all debts and expenses from the residue without apportionment or reimbursement.

2

The total death taxes of the estate amounted to approximately $1,896,265, and it became clear that the residuary estate would be unable to cover all the taxes owed. The executor of the estate drafted a spreadsheet in preparation of the federal estate tax return. This spreadsheet did not show any recovery amount of taxes from the respondent trust. As a result, petitioner, Wesley Nutt, were estimated to be left with only 11% of their bequested amount after accounting for federal taxes. Based upon these facts, petitioners filed a claim for recovery of death taxes and administration expenses against the respondent trust. Petitioners argued that respondent is liable under the doctrine of equitable apportionment for 47.54% of all death taxes and expenses incurred by the estate.

In response to petitioner's claim, respondent filed a motion to dismiss arguing that Charlotte's will expressed a clear intent to prohibit the application of equitable apportionment. Upon hearing argument, respondent's motion was denied. Specifically, the court distinguished the case relied upon by respondent, *In re Estate of Fry*, 188 Ill. App. 3d 336, 544 N.E.2d 109 (1989), on the grounds that the will in *Fry* unambiguously stated that the taxes owed were to be paid "'without reimbursement from any person.'" Fry, 188 Ill. App. 3d at 338, 544 N.E.2d at 110. The trial court found that because Charlotte's will only stated "without reimbursement" and lacked the language "from any person," her intent was ambiguous. We subsequently granted respondent leave to appeal this ruling under Supreme Court Rule 308(a). On appeal, respondent contends that the will is not ambiguous and, instead, specifically demonstrates Charlotte's intent that the taxes be paid from the residuary estate and not from the nonprobate assets received by the respondent.

STANDARD OF REVIEW

3

The scope of review of an interlocutory appeal brought under Illinois Supreme Court Rule 308 is strictly limited to the certified question. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998, 803 N.E.2d 1020, 1026 (2004). Thus, the task on appeal is to answer the certified question rather than to rule on the propriety of the parties' claims. *P.J.'s Concrete*, 345 Ill. App. 3d at 998, 803 N.E.2d at 1026. Here, the parties dispute the trial court's interpretation of the testator's will. Interpretation of a will is a question of law that an appellate court reviews *de novo*. *In re Estate of Overturf*, 353 Ill. App. 3d 640, 642 819 N.E.2d 324, 327 (2004).

ANALYSIS

Illinois does not have an equitable apportionment statute. *In re Estate of Fry*, 188 Ill. App. 3d 336, 338, 544 N.E.2d 109, 111 (1989). Illinois courts have, however, consistently applied the doctrine of equitable apportionment to intestate and testate estates, thereby permitting the apportionment of federal estate taxes among recipients of probate and nonprobate assets. *Fry*, 188 Ill. App. 3d at 338, 544 N.E.2d at 111. Equitable apportionment will not be allowed, however, as to nonprobate assets where the testator has expressed a clear intention to the contrary. *Fry*, 188 Ill. App. 3d at 338-39, 544 N.E.2d at 111.

In the case before us, the residuary estate is insufficient to cover the death taxes owed upon Charlotte's death. The question posed to us is whether Charlotte's will expresses a "clear intention" to prohibit the apportionment of federal estate taxes among recipients of probate and nonprobate assets. Petitioners are claiming that the will lacks this intent and therefore the doctrine of equitable apportionment applies. Respondent in turn claims that section four of Charlotte's will clearly shows that she intended that the taxes be paid "without apportionment or

4

reimbursement."  Respondent interprets this language to prohibit any application of the doctrine

of equitable apportionment

Section four of Charlotte's will states:

"I direct the executor to pay *from the residue* of my estate passing

hereunder, *without apportionment or reimbursement*, all of my

debts, all expenses of administration of property wherever situated

passing under this will or otherwise, and all estate, inheritance,

transfer, and succession taxes other than any tax on a generation-

skipping transfer which is not a liability of my estate (including

interest and penalties, if any) which become due by reason of my

death." (Emphasis added.)

In interpreting this section, the trial court examined our holding in *Fry*.  There, the co-

executors of the estate filed a petition for equitable apportionment of estate taxes, attorneys fees

and expenses of administration against the beneficiary of an *inter vivos* trust established by the

decedent.  The primary asset of the trust was 100 acres of land located in Will County, valued at

$700,000.00.  The decedent's will contained the following provisions:

"'ARTICLE ONE

The expense of my last illness, my funeral and the administration of my estate

shall be paid out of the principal of my residuary estate.

ARTICLE TWO

All estate and succession taxes, including interest and penalties payable by reason

of my death, shall be paid out of and be charged against the principal of my

5

residuary estate, *without reimbursement from any person*.'" (Emphasis added.)

Fry, 188 Ill. App. at 338, 544 N.E.2d at 111.

The co-executors' petition in *Fry* was filed after it became apparent that the residue was insufficient to pay for taxes and expenses. The trust filed a motion to dismiss the petition which was granted by the trial court. In dismissing the case, the trial court found that article two of the decedent's will clearly and unequivocally expressed decedent's intent to waive, on behalf of her estate, any claim or right to reimbursement or apportionment of taxes from the beneficiary of the trust, a non-probate asset. The court found that this intent was controlling and that equitable apportionment therefore could not be allowed. We affirmed the decision of the trial court, finding that the intent of the decedent as expressed in her will was clear.

In examining *Fry*, the trial court distinguished the language found in that will from the language found here in Charlotte's will. Specifically, the court stated:

> "This court does not find the language in *Fry* controlling in
> the present case. This court distinguishes *Fry* because of the
> additional language in *Fry*, which adds 'from any person.' The
> 'from any person' language is interpreted by this court as a
> direction from the testator not to look to anyone inside or outside
> the estate for payment. Said language is noticeably absent from
> the Charlotte J. Williams will. That absence is significant since
> Fry was decided in 1989 and the Charlotte J. Williams Will was
> prepared in 1998, some nine years later. As written, the Charlotte
> J. Williams Will is open to two interpretations.

6

***

Was the decedent trying to follow *Fry* but just left out some critical language, or was it her intent to intentionally deviate from the *Fry* language and to allow apportionment from the Trust? This court therefore finds that the May 14, 1998 Will of Charlotte J. Williams is ambiguous as to the testator's intent and that the Trust's 2-619 motion should be denied."

Here on appeal, we find Charlotte's will is in fact ambiguous. However, our reasons for coming to such a conclusion are different from those relied upon by the trial court. Whereas the trial court relies upon the lack of the language "from any person" in holding Charlotte's will ambiguous, we instead find the will ambiguous because it is silent as to the issue of what is to occur when the residuary estate is insufficient to cover the death taxes and administration expenses. Because the will makes no direction for or against apportionment in such a case, we have no other choice but to find it ambiguous.

Charlotte's will merely states that the death taxes should be paid from the residue "without apportionment or reimbursement." Black's Law Dictionary defines "residuum" as "that which remains of a decedent's estate, after debts have been paid and legacies deducted." Black's Law Dictionary 1310 (6th ed. 1990). Under this definition, the residue here does not include respondent's nonprobate assets or petitioners' probate assets. Therefore, the language "pay from the residue of my estate * * * without apportionment or reimbursement" only expresses Charlotte's intent to prohibit the beneficiary of the residue from seeking apportionment or reimbursement of the amounts paid out of it from the beneficiaries of the probate and nonprobate

7

assets. Simply put, the will is void of any direction as to what should occur in the case that the residue is inadequate to satisfy the estate's taxes and expenses. We do not know the reason for this omission. We can presume that Charlotte did not foresee that the residue would be insufficient to satisfy the tax burden. Regardless, because the will is silent as to what is to occur in such a case, we must find it ambiguous.

In coming to such a conclusion, we are required to reexamine our previous decision in *Fry*. The clauses at issue in both this case and in *Fry*: (1) assume that the residue will be adequate to cover the taxes and expenses; (2) direct that all of those obligations be paid from the residue; and (3) prohibit the beneficiaries of the residue from seeking apportionment or reimbursement of the payments from other probate or nonprobate assets of the estate. Neither clause contemplates the situation where the residue is insufficient to cover the taxes and expenses. As a result, both clauses are silent regarding the source of funds for the additional payments. *Fry* did not address this situation and is therefore wrong. Moreover, this case shows the tortured logic *Fry* imposes upon trial courts when faced with the issue of determining a testator's intent concerning the doctrine of equitable apportionment in this scenario. We therefore overrule our decision in *Fry* and establish a rule providing that where a testator directs through her will that all obligations be paid from the residue yet the will is silent as to the source of funds in the case that the residue is insufficient to cover such liabilities, equitable apportionment must be applied if it is later discovered that the residue is in fact insufficient. In such a case, the testator has failed to clearly express her intent as to who should be responsible for the additional payments and the will is ambiguous on this issue. The application of the doctrine of equitable apportionment is therefore proper.

The parties also raise an issue concerning an alleged agreement between them regarding the payment of death taxes and expenses of administration. This issue however is not before this court on interlocutory appeal. As discussed above, the scope of review of an interlocutory appeal brought under Supreme Court Rule 308(a) is strictly limited to the certified question. *P.J.'s Concrete*, 345 Ill. App. 3d at 998, 803 N.E.2d at 1026. Thus, our task is to answer the certified question of whether Charlotte's will is ambiguous. We have done so and our review ends there.

For the reasons stated above, we answer the certified question as to whether the will is ambiguous in the affirmative and remand the cause for further proceedings.

Certified question answered; cause remanded.

O'BRIEN, J., concurs.

HOLDRIDGE, J., dissents.


JUSTICE HOLDRIDGE, dissenting:

The disputed portion of Charlotte's will reads:

"I direct the executor to <u>pay from the residue of my estate</u> passing hereunder, <u>without apportionment or reimbursement</u>, all of my debts, all expenses of administration of property wherever situated passing under this will or otherwise, and all estate, inheritance, transfer, and succession taxes other than any tax on a generation-skipping transfer which is not a liability of my estate (including

9

interest and penalties, if any) which become due by reason of my

death." (Emphasis added.)

This language is clear, and the rationale employed by the majority betrays its understanding of the clarity. The majority rests its opinion on the fact that Charlotte's residuary estate is insufficient to cover death taxes and administration expenses. To reach this point, however, one must first conclude that Charlotte indeed directed payment of taxes and expenses from her residuary estate--not from other assets through a scheme like equitable apportionment. This conclusion answers the certified question. Instead of accepting the answer, the majority manufactures testamentary ambiguity out of dislike for one of the results. No ambiguity exists. Charlotte explicitly directed payment of taxes and expenses from her residuary estate "without apportionment or reimbursement."

The majority overrules In re Estate of Fry, 188 Ill. App. 3d 336 (1989), as if Illinois trial courts lack a method for handling cases where equitable apportionment is disclaimed and the residuary estate cannot cover taxes and expenses. In reality, such a method already exists. See 755 ILCS 5/24--3(b) (West 2002); Landmark Trust Co. v. Aitken, 224 Ill. App. 3d 843 (1992). Frye should not be reversed. The Fry court simply did what it was supposed to do: honor the plain language of a will without being swayed by the consequences.

I thus dissent from the majority's opinion.

10