# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Tri-Power Resources, Inc. v. City of Carlyle*, 2012 IL App (5th) 110075

---

| | |
|---|---|
| Appellate Court Caption | TRI-POWER RESOURCES, INC., Plaintiff-Appellant, v. THE CITY OF CARLYLE, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-11-0075 |
| Filed | January 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute as to whether defendant, a non-home-rule unit of government, had the authority to prohibit the drilling or operation of an oil or gas well within its municipal limits, the appellate court answered the question certified under Supreme Court Rule 308 in the affirmative. |
| Decision Under Review | Appeal from the Circuit Court of Clinton County, No. 05-MR-91; the Hon. William J. Becker, Judge, presiding. |
| Judgment | Certified question answered; cause remanded. |

Counsel on
Appeal

David M. Foreman, of Foreman & Kessler, Ltd., of Salem, for appellant.

Richard A. Kuiken, of Carlyle, for appellee.

Panel

JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.


# OPINION

¶ 1    In the circuit court of Clinton County, seeking a declaratory judgment that as a non-home-rule unit of government, the defendant, the City of Carlyle (the City), lacked the authority to prohibit the drilling or operation of an oil or gas well within its municipal limits, the plaintiff, Tri-Power Resources, Inc. (Tri-Power), filed a motion for summary judgment on the issue. The circuit court denied the motion for summary judgment but granted Tri-Power's motion to certify the underlying question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). We granted Tri-Power's application for leave to appeal and for the following reasons conclude that the City can prohibit the drilling or operation of an oil or gas well within its municipal limits.

¶ 2                        BACKGROUND

¶ 3    The relevant facts are not in dispute. In April 2005, Tri-Power entered into an oil and gas lease with the owners of the mineral interests in a 67-acre parcel of land located in unincorporated Clinton County. In June 2005, Tri-Power obtained a permit from the Illinois Department of Natural Resources (the Department) to drill for oil on the land. In September 2005, the City annexed the land, and by ordinance (see 65 ILCS 5/7-1-47 (West 2004)), the territory was automatically classified as a residential district pursuant to the City's zoning code, which does not allow for the drilling or operation of oil or gas wells within the City's municipal limits.

¶ 4    In December 2005, Tri-Power filed its initial complaint against the City. In November 2006, Tri-Power filed a three-count second-amended complaint. Count I of the second amended complaint sought a declaration that the City's annexation and classification of the land at issue resulted in an unconstitutional taking of Tri-Power's contracted property rights, count II sought just compensation for the taking, and count III sought a declaration that the City was not authorized to prohibit the drilling of an oil or gas well within its municipal limits.

¶ 5        In January 2007, the City filed a response to Tri-Power's second-amended complaint, admitting, *inter alia*, that the City's zoning ordinances and regulations do not permit the drilling or operation of oil or gas wells within municipal limits. In March 2008, Tri-Power filed a motion for summary judgment on count III of the complaint. In its memorandum of law in support of its motion for summary judgment, Tri-Power maintained that pursuant to section 11-56-1 of the Illinois Municipal Code (the Code) (65 ILCS 5/11-56-1 (West 2004)) and section 13 of the Illinois Oil and Gas Act (the Act) (225 ILCS 725/13 (West 2004)), the City had the "limited authority" to regulate the drilling or operation of an oil or gas well within its municipal limits, but it was not authorized to bar or prohibit such activity.

¶ 6        In June 2008, the circuit court held a hearing on Tri-Power's motion for summary judgment on count III of its second-amended complaint, and in July 2008, the court entered an order denying the motion. Specifically stating that it was not expressing an opinion as to whether Tri-Power was entitled to receive compensation from the City or whether the City could prohibit Tri-Power from drilling with the permit that the Department had issued before the City annexed the drilling site, the court interpreted section 13 of the Act as granting the City the authority to prohibit the operation of an oil or gas well within its municipal limits. The court subsequently granted Tri-Power's request for certification pursuant to Rule 308, and we, in turn, granted Tri-Power's application for leave to appeal.

¶ 7                                              ANALYSIS

¶ 8        At the outset, we note that the City's zoning code does not expressly prohibit the drilling or operation of an oil or gas well within its municipal limits. The parties agree, however, that the activity is precluded by exclusion, *i.e.*, the City's zoning code does not list the drilling or operation of an oil or gas well as a "special" or "permitted" use and all "unlisted" uses are "deemed prohibited." In any event, the certified question on appeal is whether a non-home-rule unit such as the City has the authority to prohibit or bar the drilling or operation of an oil or gas well within its municipal limits.

¶ 9        The scope of review of an interlocutory appeal brought under Rule 308 is strictly limited to the certified question. *In re Estate of Williams*, 366 Ill. App. 3d 746, 748 (2006). Because a question certified by the circuit court must be a question of law, the applicable standard of review is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 58 (2007).

¶ 10        The City is a non-home-rule unit of government, "because it has less than 25,000 inhabitants and has not elected by referendum to become a home rule unit of government." *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 694 (2004). As a non-home-rule unit, the City is governed by Dillon's Rule. *Janis v. Graham*, 408 Ill. App. 3d 898, 902 (2011).

"Dillon's Rule states that non-home-rule units possess only those powers specifically conveyed by the constitution or by statute; thus, such a unit may regulate in a field occupied by state legislation only when the constitution or a statute specifically conveys such authority. [Citation.] However, even when a non-home-rule unit is conveyed the authority to regulate in a particular field, it may not adopt an ordinance that infringes upon the spirit of the state law or is repugnant to the general policy of this state. [Citation.] An ordinance enacted under those powers that conflicts with the spirit and

-3-

purpose of a state statute is preempted by the statute." *Id.*

¶ 11 The Act authorizes the Department to issue permits for the drilling of oil and gas and to administratively regulate those operations for which Department permits have been issued. 225 ILCS 725/6.1, 7, 8, 8a (West 2004). Among other things, the Act also confers on the Department the "jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of [the] Act." 225 ILCS 725/4 (West 2004). Relevant here, section 13 of the Act provides as follows:

"Where an application is made to drill or deepen an oil or gas well within the limits of any city, village or incorporated town, the application shall so state, and be accompanied with a certified copy of the official consent of the municipal authorities for said well to be drilled, and no permit shall be issued unless consent is secured and filed with the application. In the event that an amended location is selected, the original permit shall not be valid unless a new certified consent is filed for the amended location." 225 ILCS 725/13 (West 2004).

Also relevant here, section 11-56-1 of the Code provides, "The corporate authorities of each municipality may grant permits to mine oil or gas, under such restrictions as will protect public and private property and insure proper remuneration for such grants." 65 ILCS 5/11-56-1 (West 2004). The legislature's use of the word "may" indicates that a municipality's authority to grant such permits is a "permissive power, which [a municipality] may choose to exercise or not." *Maddux v. Blagojevich*, 233 Ill. 2d 508, 523 (2009).

¶ 12 Tri-Power submits that sections 13 and 11-56-1 should be construed together as giving the City the authority to "impose reasonable restrictions on the issuance of a permit to drill an oil or gas well inside the City limits" but not the "authority to refuse to grant such a permit, where any or all conditions have been met or alternatively, as in the instant case, where none exist." In support of this contention, Tri-Power primarily relies on *People ex rel. Simpkins v. Village of Kincaid*, 26 Ill. App. 2d 68 (1960) (per curiam), and *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243 (2003).

¶ 13 In *Simpkins*, the Village of Kincaid passed an ordinance, *i.e.*, "Ordinance No. 210," providing for the issuance of permits to drill for oil or gas within its municipal limits. *Simpkins*, 26 Ill. App. 2d at 69-71. Simpkins, who had been drilling for oil in the village without a permit but with the village board's permission, applied for permits to drill in the village after his existing operations were enjoined pending compliance with the ordinance. *Id.* at 69-70. Although Simpkins "complied with every provision of the ordinance," the village, apparently troubled by various problems attributable to Simpkins' existing drilling activities, failed to act on his application for months, and "its failure to act amounted to a refusal" to issue the permits. *Id.* at 71. In the circuit court, Simpkins subsequently obtained a writ of *mandamus* directing the village to grant him the requested permits, and the village appealed. *Id.*

¶ 14 On appeal, rejecting the village's claim that its board and mayor "were vested with discretion in the matter of issuing or not issuing the permits" (*id.* at 72), the appellate court stated:

"Here, under authority given to cities and villages, the Village of Kincaid enacted an

-4-

ordinance providing for permits to drill for oil within the village limits. The ordinance, enacted by the village board, laid down the rules. It is unquestioned that the requirements in the ordinance could have been made much more stringent. However, that was not done, and this court must look at the ordinance as enacted. A careful examination of the ordinance will disclose that there is nothing in the ordinance that vests any discretion in the village officers in the granting of the permits, if the requirements of the ordinance are complied with." *Id.* at 73.

¶ 15    Determining that Simpkins was entitled to *mandamus* relief as a matter of law, the appellate court distinguished the situation before it from "situations where the administrative officer or board was vested with discretion in the exercise of powers granted to him or it," holding:

"Here no such discretion was vested and the duty of the Mayor and the village board was one of simple administrative power. The village board, by its enactment of Ordinance No. 210, made the rules. Its board must abide by the rules so set forth, and the rules must be applied equally to everyone." *Id.* at 75.

¶ 16    In *Hawthorne*, after the Department of Children and Family Services (DCFS) issued Hawthorne a license to operate a home day care at her municipal residence, she contacted the Village of Olympia Fields "to obtain a building permit so that she could remodel portions of the premises." *Hawthorne*, 204 Ill. 2d at 245-46. In response, the village advised Hawthorne that its zoning ordinance did not provide for the operation of home day cares and that she would therefore have to obtain a zoning variance before she could obtain her requested building permit. *Id.* at 246. After applying for and being denied a zoning variance, Hawthorne sued the village, arguing, *inter alia*, that "its zoning ordinance had the effect of wholly excluding home day care from the village and that such action [was] beyond the village's power." *Id.* at 247-48. Finding that the village could neither prohibit the operation of a licensed home day care nor regulate the same in contravention of DCFS regulations, the circuit court declared the village's zoning ordinance null and void to the extent that it was preempted by state law. *Id.* at 249-50. After the appellate court affirmed the circuit court's judgment, the supreme court granted the village's petition for leave to appeal. *Id.* at 251.

¶ 17    When affirming the judgment of the appellate court, the supreme court observed that the Child Care Act of 1969 (225 ILCS 10/1 *et seq.* (West 2000)) gave DCFS the statewide authority to license and regulate home day cares, but " '[n]otably absent' " from the statue was " 'any provision delegating authority to, or allowing regulation by, units of local government.' " *Hawthorne*, 204 Ill. 2d at 260 (quoting *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 116 (1987)). Applying the principles of Dillon's Rule, the court therefore concluded that the village's ordinance prohibiting home day cares was preempted by state law. *Hawthorne*, 204 Ill. 2d at 255, 258-61. In so holding, the court rejected the village's contention that had the legislature "intended the Child Care Act and its regulations to have preemptive effect, it would have said so explicitly in the legislation," stating:

"There is no question that preemption can be accomplished through explicit statutory language. That preemption *can* be achieved explicitly does not mean, however, that it

*must* be done explicitly. The law of Illinois recognizes preemption by implication. That doctrine holds that where the legislature has enacted a comprehensive system of regulation and licensure, as it did in this case, the legislature implies by that system that there is no room for regulation by local governmental units." (Emphasis in original.) *Id.* at 261.

¶ 18    Here, *Simpkins* is readily distinguishable because the decision did not implicate section 13 of the Act, Tri-Power's suit against the City is not a *mandamus* action, and the issue on appeal in the present case is whether a non-home-rule unit can prohibit the mining of oil and gas within its municipal limits. Tri-Power's reliance on *Hawthorne* is misplaced because section 13 of the Act specifically delegates authority to units of local government by giving them the power to "consent" to the operation of oil and gas wells within their municipal limits. 225 ILCS 725/13 (West 2004). Tri-Power nevertheless maintains that the Department's authority to issue permits pursuant to the Act should be deemed preemptive and that when read in conjunction with section 11-56-1 of the Code, the Act's use of the term "consent" in section 13 should be interpreted as referring to "the municipality's determination that all such conditions or reasonable restrictions imposed [on drilling within its municipal limits] have been met." We disagree.

¶ 19    "The fundamental rule of statutory construction is to give effect to the intent of the legislature," and "[t]he best evidence of legislative intent is the language used in the statute, which must be given its plain and ordinary meaning." *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 429 (2005). Furthermore, "statutes which relate to the same subject are deemed to be *in pari materia* and should be construed together." *People v. Wade*, 326 Ill. App. 3d 396, 400 (2001).

¶ 20    Here, as a matter of statutory construction, we agree with the circuit court's determination that section 13 of the Act gives the City the power to prohibit the operation of an oil or gas well within its municipal limits. Section 11-56-1 of the Code further supports that determination.

¶ 21    Section 11-56-1 of the Code gives the "corporate authorities of each municipality" the authority to "grant permits to mine oil or gas, under such restrictions as will protect public and private property and insure proper remuneration for such grants." 65 ILCS 5/11-56-1 (West 2004). Pursuant to section 13 of the Act, the Department will not issue a permit "to drill or deepen an oil or gas well within the limits of any city, village or incorporated town" unless the applicant for such a permit first secures "the official consent of the municipal authorities for said well to be drilled." 225 ILCS 725/13 (West 2004). "The statute does not define 'consent,' but Black's Law Dictionary defines the term in relevant part as '[a]greement, approval, or permission as to some act or purpose.'[Citation.] " *Vancura v. Katris*, 238 Ill. 2d 352, 378 (2010).

¶ 22    The power to give "official consent" or permission necessarily entails the power to deny the same, and pursuant to section 13 of the Act, a municipality can therefore block the Department's issuance of a permit to operate an oil or gas well within its municipal limits. Section 13 of the Act thus precludes a finding that the legislature intended the Act to have preemptive effect, and section 11-56-1 of the Code further reflects that intent by giving local

-6-

units of government the power to regulate and permit local oil and gas mining. Under the circumstances, to adopt Tri-Power's proposed interpretation of the interplay between section 13 of the Act and section 11-56-1 of the Code would require us to ignore the legislature's plain language and "read conditions into the statute[s] that are not there" (*Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 568 (2007)).

¶ 23    We lastly reject Tri-Power's suggestion that giving non-home-rule units of government the power to prohibit the operation of oil and gas wells within their municipal limits is repugnant to the general policy of the state with respect to the mining of oil and gas. The policy of the state is established by its laws (*A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 34), and sections 13 and 11-56-1 collectively grant municipalities the power to both permit and prohibit local oil and gas wells.

¶ 24                                         CONCLUSION

¶ 25    For the foregoing reasons, we answer the certified question in the affirmative and hold that a non-home-rule unit of government may prohibit the drilling or operation of an oil or gas well within its municipal limits. We express no opinion as to whether Tri-Power is entitled to receive compensation from the City or whether the City can prohibit Tri-Power from drilling with the permit that the Department issued before the City annexed the drilling site.

¶ 26    Certified question answered; cause remanded.