Docket No. 105137.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* RANDALL M., a Minor (The People of the State of Illinois, Appellant, v. Randall M., Appellee).

*Opinion filed September 18, 2008.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The issue is whether the appellate court properly construed the detention provisions contained in section 5–410 of the Juvenile Court Act of 1987 (705 ILCS 405/5–410 (West 2006)). For the reasons that follow, we vacate the appellate court's decision and dismiss the appeal as moot.

### BACKGROUND
### The Trial Court

In April 2005, the State filed a delinquency petition against Randall M. alleging one count of domestic battery. Randall admitted to the offense and was placed on probation.

In September 2006, and while Randall was still on probation, the State filed a new delinquency petition alleging unlawful possession of a firearm and unlawful use of a weapon. At the same time, the State petitioned to revoke Randall's probation. On the day that the new delinquency petition was filed, a detention hearing was held before the juvenile division of the circuit court of Lake County. At the hearing, the trial court found (1) sufficient probable cause to believe that Randall was a delinquent minor, and (2) that it was matter of immediate and urgent necessity for the protection of both Randall and the community that Randall be held in secure detention. Pursuant to local rule, a minor requiring secure detention is lodged in the Hulse Detention Center "unless otherwise ordered by a Juvenile Court Judge." 19th Jud. Cir. Ct. R. 9.13 (eff. January 2, 1997). At the hearing's conclusion, the trial court noted that Randall would soon be turning 17, and asked specifically for the date of Randall's birthday. When counsel responded that Randall would be turning 17 on the following Monday, the trial court responded, "Monday? Monday you will be transferred to Lake County [jail]."

A few days later, Randall's attorney filed an emergency motion to enjoin Randall's transfer from the Hulse Detention Center to the Lake County jail. The petition alleged, "based on [counsel's] information and belief from past practices," that once Randall turned 17, he would be transferred automatically from the Hulse Detention Center to the Lake County jail and housed in the general adult population. A hearing was held, and the trial court denied the motion and ordered Randall "transferred to the Lake County jail pursuant to statute." In so doing, the court specifically invoked section 5–410(2)(c)(v) of the Juvenile Court Act, which states that, as long as certain factors are first considered, "[p]ersons 17 years of age and older who have a petition of delinquency filed against them may be confined in an adult detention facility." See 705 ILCS 405/5–410(2)(c)(v) (West 2006).[1]

---

[1] Section 5–410(2)(c)(v) was amended effective January 1, 2004. See Pub. Act 93–255, eff. January 1, 2004 (amending 705 ILCS 405/5–410). In this case, it is unclear whether the trial court was applying the *pre*amendment or *post*amendment version of that section, as its analysis contains elements of both.

Randall filed a petition for leave to appeal under Supreme Court Rule 306(a)(5) (155 Ill. 2d R. 306(a)(5)), and the appellate court allowed the petition. As framed by the appellate court, the issues to be considered were (1) "whether section 5–410 authorizes the automatic transfer of a minor with pending delinquency matters from a juvenile detention facility to an adult detention facility upon the minor's seventeenth birthday"; and (2) "whether, under section 5–410, a minor 17 years of age or older with pending delinquency matters may be housed in the general population of a county jail." 374 Ill. App. 3d 808, 809.

*Mootness*

Before addressing the merits, the appellate court noted that both issues had become moot because, since filing his petition for leave to appeal, Randall had pleaded guilty and been sentenced. Consequently, Randall was no longer subject to section 5–410, which governs a minor's detention pending adjudication. Nevertheless, the court invoked the public interest exception to the mootness doctrine on the grounds that (1) the issues relate to the detention of minors and therefore are of a public nature; (2) there are no published decisions construing section 5–410; and (3) the issues are likely to recur. 374 Ill. App. 3d at 811-12.

*Automatic Transfer*

On the merits, the appellate court first addressed the automatic-transfer question. The court observed that, until recently, section 5–410(2)(c)(v) stated that persons 17 years of age and older who have a pending delinquency petition "*shall* be confined in an adult detention facility." (Emphasis added.) See 705 ILCS 405/5–410(2)(c)(v) (West 2002). Clearly, this language was mandatory and *required* the minor to be transferred to the county jail on his or her seventeenth birthday. 374 Ill. App. 3d at 814. In 2004, however, section 5–410(2)(c)(v) was amended to state that persons 17 years of age and older "*may* be confined in an adult detention facility," provided certain factors are considered. (Emphasis added.) See 705 ILCS 405/5–410(2)(c)(v) (West 2006). Clearly, this new

language is *discretionary* and leaves no room for an automatic transfer on the minor's seventeenth birthday. 374 Ill. App. 3d at 814. Consequently, the court held that any policy providing for automatic transfer is invalid. 374 Ill. App. 3d at 814.

The court then added that it was uncomfortable with the lack of procedural safeguards in section 5–410, most especially that Randall had to initiate a proceeding to *prevent* his transfer to the county jail. 374 Ill. App. 3d at 814. The court compared section 5–410 with section 3–10–7 of the Unified Code of Corrections (730 ILCS 5/3–10–7 (West 2006)), which governs the transfer of minors prosecuted as adults from the Department of Juvenile Justice to the Adult Division of the Department of Corrections. Specifically, the court noted that section 3–10–7 provides for a formal notice requirement, an evidentiary hearing, the right to counsel, and a statement from the trial court setting forth the bases for its transfer ruling. 374 Ill. App. 3d at 814-15. Section 5–410, by contrast, contains no procedural guidelines whatsoever. Accordingly, the court held that, in the interests of due process, "a procedure similar to the one outlined in section 3–10–7 of the Code should be employed in applying the transfer provision set forth in section 5–410(2)(c)(v) of the Act, albeit in an expedited manner." 374 Ill. App. 3d at 815.

### General Population

The court then addressed whether, under section 5–410, a minor 17 years of age or older with pending delinquency matters may be housed in the general population of a county jail. In arguing that such minors *may* be housed in the general population, the State relied on section 5–410(2)(c)(v), which states:

> "Minors under 17 years of age shall be kept separate from confined adults and may not at any time be kept in the same cell, room or yard with adults confined pursuant to criminal law. Persons 17 years of age and older who have a petition of delinquency filed against them may be confined in an adult detention facility. In making a determination whether to confine a person 17 years of age or older who has a petition of delinquency filed against the person, these factors, among other matters, shall be considered:

　　　　(A) The age of the person;

　　　　(B) Any previous delinquent or criminal history of the person;

　　　　(C) Any previous abuse or neglect history of the person; and

　　　　(D) Any mental health or educational history of the person, or both." 705 ILCS 405/5–410(2)(c)(v) (West 2004).

According to the State, this language is clear and unambiguous. If housed in the county jail, minors under 17 years of age must be kept separate from the confined adults. By contrast, minors 17 years of age and older "may be confined in an adult detention facility" without restriction.

　　In rejecting this argument, the appellate court focused not upon section 5–410(2)(c)(v), but instead upon section 5–410(2)(d)(i), which states:

　　　　"If a minor 12 years of age or older is confined in a county jail in a county with a population below 3,000,000 inhabitants, then the minor's confinement shall be implemented in such a manner that there will be no contact by sight, sound or otherwise between the minor and adult prisoners. Minors 12 years of age or older must be kept separate from confined adults and may not at any time be kept in the same cell, room, or yard with confined adults." 705 ILCS 405/5–410(2)(d)(i) (West 2004).

After noting that Lake County has a population below 3 million inhabitants, the appellate court explained that section 5–410(2)(d)(i) was clear and unambiguous. With only limited exceptions that are inapplicable here, if a minor 12 years of age or older is confined in the county jail, that minor "must be kept separate from the adults" and "in such a manner that there will be no contact by sight, sound or otherwise between the minor and adult prisoners." Accordingly, the appellate court concluded that, "even if he was properly transferred to the Lake County jail, [Randall] should have been confined separately from any adult prisoners." 374 Ill. App. 3d at 818.

　　We granted the State's petition for leave to appeal. 210 Ill. 2d R. 315.

## DISCUSSION

Both sides concede that the issues in this case are moot. Nevertheless, they invite this court to consider them anyway, given the public interest in an authoritative construction of the detention guidelines set forth in section 5–410.

There is a fundamental problem with this request: section 5–410 does not apply to this case. Section 5–410 appears in part 4 of the Juvenile Court Act, which governs the "arrest and custody" of minors. This part of the Act does not govern or even speak to the trial court at the detention hearing. Instead, it governs what the police may do with a minor between the time of his arrest and the time he is first brought before the court. For example, section 5–401 addresses the arrest and taking into custody of minors, section 5–401.5 governs the custodial interrogation of arrested minors, section 5–405 outlines a police officer's duties following the arrest of a minor, and section 5–415 defines how long an arrested minor may be held in temporary custody before he or she must be either released or brought before the court for a detention or shelter care hearing. See 705 ILCS 405/5–401, 5–401.5, 5–505, 5–415 (West 2006).

Not surprisingly, then, a careful reading of section 5–410 reveals that it governs not the pretrial detention of minors *generally*, but rather only the detention of minors *while they are in police custody*. Section 5–410(2) begins by stating that, when warranted, arrested minors 10 years of age or older "may be kept or detained in an authorized detention facility." 705 ILCS 405/5–410(2)(a) (West 2006). If the arrested minor is under 12 years of age, he or she may be detained in a county jail or municipal lockup for no more than six hours. 705 ILCS 405/5–410(2)(a) (West 2006). If the arrested minor is 12 years of age or older, he or she may be detained in a county jail or municipal lockup for no more than 12 hours, unless the crime is one of violence, in which case the minor may be detained for up to 24 hours. 705 ILCS 405/5–410(2)(c) (West 2006). Once this initial time limit expires, an arrested minor 12 years of age or older may remain in the county jail only if that jail complies with the detention standards enumerated in section 5–410(2)(d) (705 ILCS 405/5–410(2)(d) (West 2006)).

Notably, the statute relied upon by both the trial court and the State in this case–section 5–410(2)(c)(v)–applies only during the

initial 12- to 24-hour period immediately following the minor's arrest. Again, section 5–410(2)(c) provides that "no minor shall be detained in a county jail or municipal lockup for more than 12 hours, unless the offense is a crime of violence in which case the minor may be detained up to 24 hours." 705 ILCS 405/5–410(2)(c) (West 2006). This section is then followed by five subsections, each of which in some way regulates this initial holding period. Section 5–410(2)(c)(i) defines when that period begins. 705 ILCS 405/5–410(2)(c)(i) (West 2006). Section 5–410(2)(c)(ii) provides for periodic supervision and prohibits the minor from coming or remaining in contact with confined adults. 705 ILCS 405/5–410(2)(c)(ii) (West 2006). Section 5–410(2)(c)(iii) requires the police to inform the minor of the purpose of the detention, the time it is expected to last, and the fact that it cannot exceed the time specified under the Act. 705 ILCS 405/5–410(2)(c)(iii) (West 2006). Section 5–410(2)(c)(iv) requires the police to keep a log showing the basis for the detention, the bases for the decision to detain, and the length of time the minor was in detention. 705 ILCS 405/5–410(2)(c)(iv) (West 2006). Finally, and most importantly, section 5–410(2)(c)(v) describes the conditions under which the arrested minor may be confined during this initial holding period. If the minor is under 17 years of age, he or she must be kept separate from confined adults and may not at any time be kept in the same cell, room or yard with confined adults. If the minor is 17 years of age or older, he or she may be confined in an adult detention facility, provided certain factors are first considered. 705 ILCS 405/5–410(2)(c)(v) (West 2006). Read in its proper context, then, section 5–410(2)(c)(v) is not, as the State insists, a general statute governing the pretrial detention of minors with pending delinquency petitions. Rather, it is a narrowly focused subsection from a statute regulating only the initial hours of an arrested minor's custodial detention.

Once the initial 12- or 24-hour holding period expires, a minor 12 years of age or older may remain in the county jail only if that jail complies with the standards set forth in section 5–410(d) (705 ILCS 405/5–410(d) (West 2006)).[2] Under these standards, a county jail may hold a minor for up to 40 hours if it (1) ensures that there is no

_____

[2]These same standards are set forth again in section 5–501(4).

contact by sight, sound or otherwise between the minor and adult prisoners; (2) ensures that the minor is kept separate from confined adults and is not at any time kept in the same cell, room, or yard with confined adults; and (3) complies with all monitoring standards promulgated by the Department of Corrections and training standards approved by the Illinois Law Enforcement Training Standards Board (the Standards Board). 705 ILCS 405/5–410(d)(i) (West 2006). To keep the minor for between 40 hours and one week, the county jail must comply with all temporary detention standards promulgated by the Department and with all training standards approved by the Standards Board. 705 ILCS 405/5–410(d)(ii) (West 2006). And to keep minors for longer than one week, a county jail must comply with all programmatic and training standards for juvenile detention homes promulgated by the Department. 705 ILCS 405/5–410(d)(iii) (West 2006).[3]

The next step of the process is set forth in section 5–415, which requires that, "[u]nless sooner released, a minor alleged to be a delinquent minor taken into temporary custody must be brought before a judicial officer within 40 hours for a detention or shelter care hearing to determine whether he or she shall be further held in custody." 705 ILCS 405/5–415(1) (West 2006). Once this occurs, as it did here, section 5–410 is no longer applicable. Now, the process is governed by section 5–501. See 705 ILCS 405/5–501 (West 2006). Titled "Detention or shelter care hearing," section 5–501 enumerates the procedures and guidelines governing the trial court's pretrial-detention determination. And unlike section 5–410, which applies

---

[3]A clarification is required here. At oral argument, the State argued that sight and sound restrictions are required only during the first 40 hours of a minor's detention and that, after that, "the court would be free to order the person transferred to an adult facility free of any sight and sound restrictions." In support, the State noted that section 5–410(d)(i) is the only portion of section 5–410(d) that contains a sight and sound restriction, and it is expressly limited to the first 40 hours of the minor's confinement. The State is incorrect. All three subsections of section 5–410(d) require the county jail to comply with certain regulations promulgated by the Department. All of these regulations contain an explicit sight and sound restriction. See 20 Ill. Adm. Code §§701.270, 701.280, 702.5 (2003).

before the commencement of any court proceedings, section 5–501 contains all of the procedural safeguards one would expect to find in a statute governing a judicial detention hearing.[4] Indeed, section 5–501 specifically provides for an evidentiary hearing, the right to counsel, and a written order setting forth the factual basis for the trial court's detention ruling. 705 ILCS 405/5–501(1), (2) (West 2006). Moreover, like section 5–410(d), section 5–501(4) outlines the conditions under which minors with pending delinquency matters may be held pending adjudication. See 705 ILCS 405/5–501(4) (West 2006). *This* is the statute that governs trial courts during a detention or shelter care hearing, and this is that statute that the trial court here should have consulted.

So where does this leave us? The parties concede that any issues relating to Randall's pretrial detention are moot, as Randall has since pleaded guilty and been sentenced. Nevertheless, they invite this court to address these issues anyway, under the public interest exception to the mootness doctrine. Unfortunately, the foregoing discussion compels us to decline this invitation. Indeed, all of the issues addressed by the courts below and briefed by the parties here relate to section 5–410. But that statute is inapplicable to this case, as the detention rulings at issue all arose in the course of Randall's detention or shelter care hearing. As importantly, no issues are raised, either by the parties or by the courts below, under the statute that *does* apply to this case, namely section 5–501.[5] Consequently, we have no choice

---

[4]The appellate court's decision to invoke the public interest exception to the mootness doctrine was based partially on the fact that there are "no cases interpreting the statutory provisions at issue." 374 Ill. App. 3d at 811. However, the likely explanation for the absence of relevant case law is that section 5–410 applies prior to the initiation of court proceedings and therefore rarely, if ever, will form the basis for a judicial order. By contrast, section 5–501 has been construed numerous times. See, *e.g.*, *In re T.W.*, 381 Ill. App. 3d 603 (2008); *In re C.J* ., 328 Ill. App. 3d 103 (2002); *In re A.N.*, 324 Ill. App. 3d 510 (2001).

[5]We note that Randall's trial counsel attempted to bring this problem to the trial court's attention, to no avail. In his emergency motion to enjoin Randall's transfer, counsel argued that a close reading of section 5–410(2)(c)(v) "indicates that this provision applies only to the forty-hour

but to vacate the appellate court's decision below and dismiss this appeal as moot.

## CONCLUSION

The judgment of the appellate court is vacated, and the appeal is dismissed.

*Appellate court judgment vacated;*
*appeal dismissed.*

---

period preceding a detention hearing." And then again, after the trial court denied the emergency motion, counsel politely suggested that "the statute that your Honor is forming its opinion on doesn't apply at this juncture and \*\*\* only applies to the 40 hour window during which time a detention hearing would have to take place." The trial court thanked counsel for his input and stood on its ruling.