# Illinois Official Reports

## Appellate Court

---

### *In re Mathias H.*, 2019 IL App (1st) 182250

---

| | |
|---|---|
| Appellate Court Caption | *In re* MATHIAS H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Mathias H., Respondent-Appellant). |
| District & No. | First District, First Division<br>No. 1-18-2250 |
| Filed | October 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-JD-1274; the Hon. Michael P. Toomin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Amy P. Campanelli, Public Defender, of Chicago (Greg Koster and Armando G. Sandoval, Assistant Public Defenders, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Griffin concurred in the judgment and opinion.<br>Justice Hyman dissented, with opinion. |

**OPINION**

¶ 1        This is an appeal from the denial of minor respondent Mathias H.'s petition for *habeas corpus*.

¶ 2        The issue in this appeal is whether a Cook County ordinance that prohibits the county's jail and juvenile temporary detention facilities from accepting any minor under the age of 13 is a valid exercise of the county's home rule power where a judge has ordered the detention of a minor under the age of 13 pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2018)) and where the detention is governed by the County Shelter Care and Detention Home Act (Detention Act) (55 ILCS 75/1 *et seq.* (West 2018)). For the reasons that follow, we find that the ordinance is unenforceable because the General Assembly, pursuant to article VII, section 6(i), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(i)), has specifically limited the concurrent exercise of Cook County's home rule authority to regulate the detention of juveniles 10 years and older who fall within jurisdiction of the Juvenile Court Act in the county jail or the county Juvenile Temporary Detention Center (JTDC).

¶ 3        On August 4, 2018, the State filed a petition for adjudication of wardship alleging that 12-year-old respondent was a delinquent minor because on August 3, 2018, he committed the offenses of armed robbery, aggravated robbery, and robbery after respondent and his 18-year-old brother, who was armed with a handgun, robbed an employee at a GameStop store, stealing money, gift cards, a PlayStation 4, and an Xbox gaming system.

¶ 4        At his arraignment hearing on that same day, Judge Marianne Jackson found probable cause. The court conducted a temporary custody hearing and heard argument on whether the secured custody of respondent was a matter of immediate and urgent necessity. The State requested that respondent be placed on electronic monitoring. Defense counsel asked that respondent be returned home to his mother given that respondent was in seventh grade and was not armed with a weapon during the offense. The court explained to the respondent that he was being placed on home confinement and would be required to wear a GPS ankle bracelet. The court also informed respondent that he would be responsible for charging the bracelet and that failure to charge the bracelet or tampering with it would be considered a violation. The court also entered an order prohibiting respondent from entering the GameStop store or having any contact with the victim. The court released respondent from custody at the Saura Center, a nonsecure shelter, and placed him on home confinement with electronic monitoring and continued the case for status on discovery.

¶ 5        On September 6, 2018, the State filed a motion to revoke electronic monitoring alleging that respondent engaged in unauthorized movement when he was out of his home. At a hearing on the motion, the State asserted that on September 1, 2018, a probation officer visited respondent's home and was informed by respondent's mother that respondent had left home the day before and had not returned. The State also asserted that the electronic monitoring device had lost power on September 2 through September 3 and for all of September 5. Defense counsel explained that respondent's failure to charge the device was because he was in school but had no explanation for the fact that respondent was not home on September 1, 2018, which was a Saturday. Defense counsel further stated that respondent acknowledged the violation and was not asking for a hearing.

¶ 6    When questioned by the court, respondent indicated that he was at his friend's house. Respondent's mother told the court that when she returned home from work at 2:30 p.m., respondent was not home so she contacted his friends on Facebook but they did not know respondent's whereabouts. Respondent returned home the next day about 8 p.m. Respondent's mother told the court that respondent repeatedly failed to listen to her. After admonishing respondent, the court continued the electronic monitoring order and sent respondent back to the Saura Center for a few days.

¶ 7    On September 12, 2018, the Cook County Board passed ordinance No. 18-4955, which provides in relevant part that "[a]n individual under 13 years of age shall not be admitted, kept, detained or committed to the Cook County Jail or the Juvenile Temporary Detention Center." Cook County Ordinance No. 18-4955 (approved Sept. 12, 2018) (codified at Cook County Code of Ordinances § 46-4).

¶ 8    On the next court date, September 12, 2018, the court again reminded respondent that he was on electronic monitoring and was not free to visit friends but could only leave home to go to school or church. Respondent indicated that he understood, and the court told respondent that if he failed to comply, he would be sent to the detention center. The case was continued for discovery.

¶ 9    On September 24, 2018, the State filed a second motion to revoke electronic monitoring alleging that respondent allowed his monitoring device to lose power on September 17, 2018, from 2:45 p.m. to 3:25 p.m., and later that day from 5:25 p.m. to 12:36 a.m. the following morning. It was further alleged that on September 23, 2018, a strap-tampering alert was issued at 1:25 p.m. Probation officer Escalara conducted a home visit and determined that respondent was not home and that his whereabouts were unknown.

¶ 10    The State asked the court for guidance because the recently enacted section 46-4 of the Cook County Code of Ordinances (Cook County Code of Ordinances § 46-4 (eff. Sept. 12, 2018)) altered the court's authority to place 12-year-old respondent in the JTDC. Judge Jackson stated that the ordinance "might be unconstitutional, because it infringes on [the] authority that this Court has been granted by the legislature of the State of Illinois to make decisions on detention." After discussing the basis for the State's motion to revoke electronic monitoring, the court stated,

     "[N]obody has any ideas, other than [respondent] right now, where he is. He is certainly at this point a danger to himself. The fact that he has—this is the second time he has violated electronic monitoring[,] suggests to this Court that electronic monitoring is not a viable alternative in terms of knowing where this minor is at. And it certainly is doing nothing to require him to stay in his home.

     And I think that the Cook County Board's ordinance attempts to tie my hands to deal with a situation that the legislature of the State of Illinois has granted me. So for all these reasons, juvenile arrest warrant to issue. Do not release. If and when we get a hold [of] this young man, hopefully before he is in a position to do danger to himself, we will then more deeply delve into what's the next step for any of us, the State, the counsel for the minor, or the judge."

¶ 11    Respondent was arrested on the warrant. At a hearing held that same day, defense counsel asked that respondent be sent to the Saura Center or to the JTDC. Judge Jackson reiterated that, although Cook County had home rule powers, those powers were not absolute and were limited to address local issues. The court stated that it believed that Illinois state law was controlling

because criminal law and procedure are "an area of statewide responsibility." The court expressed its concern that "we are the only court [in the state of Illinois] that would be required to not hold minors under the age of 13." The court also stated that, "If I follow this ordinance, what I would be creating is a 12-year-old who is at liberty to ignore his mother, at liberty to ignore this Court, and put himself in extreme danger, and that I would be powerless, essentially a paper tiger, to do anything about it." After stressing that Illinois law allows for a minor of 10 years of age and older to be detained in a secure detention facility where there is probable cause to believe that the minor is delinquent and it is a matter of urgent and immediate necessity for the protection of the minor, the court ordered the respondent to be held in custody at the JTDC.

¶ 12        On October 4, 2018, the respondent filed a motion to reconsider detention. Over defense counsel's objection, the case was continued until October 19, 2018, with the respondent remaining in custody for his own safety.

¶ 13        On October 10, 2018, respondent filed an emergency petition for *habeas corpus*, seeking his immediate release. On October 12, 2018, Judge Michael P. Toomin held a hearing on the petition. Respondent argued that pursuant to section 46-4, as a minor under the age of 13, he could not be detained in the detention center and that the county, as a home rule unit, had the authority to enact the ordinance because the legislature did not specifically preclude the county from doing so. Respondent also argued that the ordinance did not conflict with state law that provides that a court "may" place a minor in the detention center. See 55 ILCS 75/1.2 (West 2018). The State took no position on respondent's *habeas corpus* petition. The court noted that the State had previously asserted that the county ordinance superseded state law on the issue, and the prosecutor responded that he was not aware of the circumstances surrounding its earlier position but that the State was now taking no position on the respondent's *habeas corpus* petition.

¶ 14        On October 17, 2018, Judge Toomin issued a written order denying respondent's petition for *habeas corpus*. Judge Toomin found that the county board did not have home rule authority to enact section 46-4 because the General Assembly had preempted the purported exercise of power expressed in the ordinance. This appeal followed.

¶ 15                                              ANALYSIS

¶ 16        The issue presented for our review is whether the trial court properly denied respondent's *habeas corpus* petition on the basis that the Cook County Board lacked home rule authority to enact section 46-4 that prohibits the admission, detention, or commitment of a minor under the age of 13 to the county jail or the county JTDC when detention or commitment is pursuant to a judicial order entered under the authority granted in the Juvenile Court Act.

¶ 17        Initially, the parties agree that this issue is moot because respondent has served his sentence and has been released. An issue becomes moot when an actual controversy no longer exists and the interests of the parties are no longer in controversy. *Novak v. Rathnam*, 106 Ill. 2d 478, 482 (1985). If an appeal involves the validity of a sentence, and that sentence has been served, the appeal is rendered moot. *In re Shelby R.*, 2013 IL 114994. An issue can also be moot in a juvenile detention case where the period of detention has been completed at the time of appeal. *In re Dexter L.*, 334 Ill. App. 3d 557, 558-59 (2002). However, exceptions to the mootness doctrine exist. Specific to this case is the public interest exception. Application of this exception requires "(1) the existence of a question of a public nature; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of

their duties; and (3) the likelihood the question will recur." *People v. McCaskill*, 298 Ill. App. 3d 260, 264 (1998).

¶ 18     In *In re Dexter L.*, 334 Ill. App. 3d at 558-59, this court applied the public interest exception to the mootness doctrine where a juvenile was found in violation of his probation and was ordered to be detained for 30 days in the county jail. The State argued that the appeal was moot because respondent had already completed the period of detention. We concluded that " '[t]he detention of a juvenile is a matter of public concern, and an authoritative determination of the issue will guide public officials and juvenile court judges who are likely to face the problem in the future.' " *Id.* at 558 (quoting *People v. Clayborn*, 90 Ill. App. 3d 1047, 1052 (1980)). We also reasoned that, due to the time constraints imposed by the Juvenile Court Act, the issue was likely to recur. *Id.* at 558-59. We find the same considerations outlined in *In re Dexter L.*, to be relevant here.

¶ 19     Similar to in *In re Dexter L.*, the issue presented here is a matter of public concern and an authoritative determination of this issue will guide our judges sitting in juvenile court who are likely to consider this issue in the future. Although very few minors under the age of 13 are subject to the Juvenile Court Act, it is all but a certainty that in the future there will be minors under the age of 13 accused of criminal activity in Cook County who are taken into custody and brought before a juvenile court judge to determine whether a detention or shelter care hearing should be held. See 705 ILCS 405/5-401, 5-401.5, 5-415, 5-505 (West 2018). *In re Randall M.*, 231 Ill. 2d 122, 129 (2008). It is also all but a certainty that, for an unknown cohort of minors under the age of 13, after a detention or shelter care hearing a judge will find that "it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained." 705 ILCS 405/5-501(2) (West 2018). Judges will make these gut-wrenching decisions after learning as much as possible about the minor and giving consideration to available noncustodial alternatives and will order detention only after it is established that "it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another." 705 ILCS 405/5-501(2) (West 2018).

¶ 20     Judges need guidance from this court on whether the authority granted under the Juvenile Court Act and the Detention Act to place a minor under the age of 13 in a detention facility has been restricted by section 46-4 of the Cook County Code of Ordinances. We find that resolution of this issue bears directly on the welfare of the community and the best interests of a minor "who requires secure custody for his own or the community's protection in physically restricting facilities pending hearing by the court, execution of an order of court, placement or commitment." 55 ILCS 75/1.1 (West 2018).

¶ 21     We also find that, although the State took "no position" before the juvenile court on the enforceability of section 46-4 with respect to respondent's *habeas corpus* petition, this does not prohibit or restrict the State on appeal from urging this court to affirm the denial of the petition. First, because this is an important public issue that is likely to recur, it is helpful to this court to have the State's input. Second, we agree with the State that, as the appellee, if the "no position" taken below is considered the equivalent of a concession, we are not bound by a party's concession (*Beacham v. Walker*, 231 Ill. 2d 51, 60 (2008)) and an "appellee may raise any argument or basis supported by the record to show the correctness of the judgment, even though he had not previously advanced such an argument" (*People v. P.H.*, 145 Ill. 2d 209, 220 (1991)). Lastly, the State raised the issue of having taken "no position" in the juvenile court in its appellee's brief, and petitioner has made no reply or comment in this regard. The

respondent does not object to the State's appearance in this appeal. Nor do we. In our view, the State's participation in this appeal is expected and consistent with its duty to represent the best interests of the public at large, including the protection of minors subject to the jurisdiction of the juvenile court.

¶ 22 Respondent argues that the juvenile court erred in denying his petition for *habeas corpus*. Respondent argues, and there is no dispute, that Cook County is a home rule unit of government under the Illinois Constitution. Ill. Const. 1970, art. VII, § 6(a). As a home rule unit, subject to certain limitations, it "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." *Id.* Relevant to this case is the constitutional limitation contained in article VII, section 6(i), that states: "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Respondent contends that the General Assembly did not "mention (specifically, or at all) the detention of minors" in the Detention Act and concludes that absent an express legislative limitation on home rule authority, section 46-4 of the Cook County Code of Ordinances is valid. The State responds that the county lacked home rule power to enact this ordinance where the ordinance prevents a juvenile court judge from exercising its discretionary statutory authority to place 10- to 12-year-old minors in the detention center under limited and appropriate circumstances and that the General Assembly has preempted the county by specifically limiting its concurrent authority to regulate and detain minors as authorized in the Detention Act (55 ILCS 75/1 *et seq.* (West 2018)).

¶ 23 We review *de novo* the denial of a *habeas corpus* petition. *People v. Johnson*, 206 Ill. 2d 348, 359-60 (2002). We may affirm the trial court's ruling for any reason supported by the record regardless of the basis relied upon by the trial court. *Pekin Insurance Co. v. AAA-1 Masonry & Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 21.

¶ 24 At issue in this case is the enforceability of section 46-4. Cook County Code of Ordinances § 46-4 (eff. Sept. 12, 2018) states:

"(a) Placement of a minor away from his or her home must be the last resort and be the least restrictive alternative available.

(b) An individual under 13 years of age shall not be admitted, kept, detained or committed to the Cook County Jail or the Juvenile Temporary Detention Center."

¶ 25 We find that section 46-4 is an invalid exercise of Cook County's home rule authority because it conflicts with the express limitation contained in section 9.2 of the Detention Act (55 ILCS 75/9.2 (West 2018)). The ordinance clearly conflicts with the juvenile court's power to detain delinquent juveniles over the age of 10 under sections 5-410 and 5-501 of the Juvenile Court Act and the duty imposed on the personnel of the county juvenile detention facilities to accept those juveniles under section 1.2 and section 4 of the Detention Act.

¶ 26 A home rule ordinance that conflicts with state law is not necessarily invalid because a home rule unit "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt" (Ill. Const. 1970, art. VII, § 6(a)), and the constitution expressly provides that the "[p]owers and functions of home rule units shall be construed liberally" (Ill. Const. 1970, art. VII, § 6(m)). "Section 6(a) was

written with the intention to give home rule units the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30.

¶ 27 However, this broad grant of power is not unlimited. The Illinois Constitution allows the State to retain the exclusive power to exercise any power or function of a home rule unit, other than the power to tax, or a home rule unit may exercise or perform a home rule power concurrently with the State unless the General Assembly specifically limits the concurrent exercise by the home rule unit. Article VII, section 6(h), states "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power." Ill. Const. 1970, art. VII, § 6(h). Article VII, section 6(i), provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Thus, the General Assembly "may *** preempt the exercise of a municipality's home rule powers by expressly limiting that authority." *Palm*, 2013 IL 110505, ¶ 31. "If the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect." *Id.* In summary, the Illinois Constitution provides home rule units with the same powers as the sovereign, except when those powers are expressly limited by the General Assembly. *City of Chicago v. Roman*, 184 Ill. 2d 504, 513 (1998) (citing *Triple A Services, Inc. v. Rice*, 131 Ill. 2d 217, 230 (1989)).

¶ 28 To determine the constitutionality of the county's home rule power in this case, we first look at "whether the disputed exercise of local government power pertains to local government and affairs as required under section 6(a)." *Palm*, 2013 IL 110505, ¶¶ 35-36. If it does, we must determine whether the General Assembly preempted the county's exercise of its home rule powers in the area. *Id.* If it does not, we then must ascertain the "the proper relationship" between the local legislation and the state statute. *Id.*

¶ 29 We conclude that the exercise of Cook County's home rule power in section 46-4 of the Cook County Code of Ordinances pertains to the county's government and affairs in that the ordinance aims to prohibit minors under the age of 13 from being admitted, kept, detained, or committed in county juvenile detention facilities. See *id.* ¶¶ 35-36. The placement of a minor into a secure detention facility is a matter of public concern for the state and county governments. The State, as *parens patriae*, has a compelling interest in protecting the welfare of the children of this state (*In re Presley*, 47 Ill. 2d 50, 56 (1970)), and this ordinance can reasonably be considered an attempt by the county to concurrently exercise its police power consistent with the State's overall concern for the well-being of juveniles in the justice system.

> "Illinois has been a national leader in the field of juvenile justice since the Illinois legislature enacted 'An Act to regulate the treatment and control of dependent, neglected and delinquent children' (1899 Ill. Laws 131)—or the Illinois Juvenile Court Act—on July 1, 1899. The first juvenile court in the country was located in Chicago across the street from Hull House, an effective and prominent social service agency founded by social reformer Jane Addams. It was Addams who rallied the movement for a separate juvenile justice system, which would remove children from being tried and imprisoned by the adult criminal system." *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 32.

¶ 30     Despite the fact that section 46-4 pertains to county government and affairs, we find that the General Assembly specifically limited the concurrent exercise of the county's home rule power to deny the admission of minors under the age of 13 to the county jail and the county JTDC and section 46-4 is an invalid exercise of its home rule authority. See *Palm*, 2013 IL 110505, ¶¶ 35-36. Our determination that the General Assembly expressly limited the county's concurrent exercise of authority over the admission of minors under the age of 13 to the county jail or TJDC rests on a plain reading of the Detention Act (55 ILCS 75/1 *et seq.* (West 2018)) and the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2018)), which both address detention of a minor.

¶ 31     Part 4 of the Juvenile Court Act "governs the 'arrest and custody' of minors" and "governs what the police may do with a minor between the time of his arrest and the time he is first brought before the court." *Randall M.*, 231 Ill. 2d at 129. Section 5-410(2)(a) of the Juvenile Court Act addresses the court's authority to place 10- to 12-year-old minors in the detention center following their arrest and provides in relevant part:

> "(2)(a) Any minor 10 years of age or older arrested pursuant to this Act where there is probable cause to believe that the minor is a delinquent minor and that (i) secure custody is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another, (ii) the minor is likely to flee the jurisdiction of the court, or (iii) the minor was taken into custody under a warrant, may be kept or detained in an authorized detention facility. A minor under 13 years of age shall not be admitted, kept, or detained in a detention facility unless a local youth service provider, including a provider through the Comprehensive Community Based Youth Services network, has been contacted and has not been able to accept the minor. No minor under 12 years of age shall be detained in a county jail or a municipal lockup for more than 6 hours." 705 ILCS 405/5-410(2)(a) (West 2018).

¶ 32     After the minor is arrested and brought before a judge, section 5-501(2) gives the juvenile court authority to conduct a detention or shelter care hearing and "[i]f the court finds that it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained or placed in a shelter care facility or that he or she is likely to flee the jurisdiction of the court, the court may prescribe detention or shelter care." 705 ILCS 405/5-501(2) (West 2018).

¶ 33     "Section 5-501 contains all of the procedural safeguards one would expect to find in a statute governing a judicial detention hearing. Indeed, section 5-501 specifically provides for an evidentiary hearing, the right to counsel, and a written order setting forth the factual basis for the trial court's detention ruling. 705 ILCS 405/5-501(1), (2) (West 2006). Moreover, like section 5-410(d), section 5-501(4) outlines the conditions under which minors with pending delinquency matters may be held pending adjudication. See 705 ILCS 405/5-501(4) (West 2006)." *In re Randall M.*, 231 Ill. 2d at 132-33.

¶ 34     The Detention Act allows a county to create, fund, support, and maintain juvenile detention facilities. 55 ILCS 75/1 *et seq.* (West 2018). Section 1(a) of the Detention Act specially grants the county board authority to "locate, purchase, erect, lease, or otherwise provide and establish, support and maintain a detention home for the care and custody of delinquent minors." 55 ILCS 75/1(a) (West 2018).

¶ 35     The Detention Act defines "detention" as:

"the care of a minor alleged or adjudicated as a delinquent as defined in the Juvenile Court Act or the Juvenile Court Act of 1987, who requires secure custody for his own or the community's protection in physically restricting facilities pending hearing by the court, execution of an order of court, placement or commitment." 55 ILCS 75/1.1(b) (West 2018).

Section 1.2 recognizes that a judge acting under the Juvenile Court Act has the authority to order the detention of a minor. 55 ILCS 75/1.2 (West 2018) ("A court acting under the Juvenile Court Act of 1987, may, except as otherwise provided in that Act, place any minor coming within the terms of that Act in home detention or a shelter care or detention home established pursuant to this Act."). Clearly, admission of a minor into a county detention facility can only be by order of a judge acting under the provisions of the Juvenile Court Act, unrestricted by any home rule ordinances.

¶ 36    The General Assembly expressed its intention that the operation and administration of juvenile detention facilities would lie with the judiciary and not the county board. The chief judge of the circuit court appoints "[t]he administrator and all other necessary personnel" of the detention facility and the "Chief Judge of the Cook County Circuit Court *** shall have administrative control over the budget of the Cook County Juvenile Temporary Detention Center and any other shelter care home or detention home in Cook County." 55 ILCS 75/3(a), (c) (West 2018).

¶ 37    The Detention Act also is clear that "It shall be the duty of the administrator *** and the staff of the detention home to receive all children who are committed to the homes by the court, until further order of the court ***." 55 ILCS 75/4 (West 2018). The Detention Act specifically provides that "all county shelter care homes and detention homes in Cook County, including the Cook County [JTDC] *** must be in compliance with this Act." 55 ILCS 75/9.1(d) (West 2018).

¶ 38    Respondent argues that the Detention Act does not "mention (specifically, or at all) the detention of minors," so there is no home rule preemption. This argument is totally defeated by the express statement of the General Assembly that:

> "A county, including a home rule county, may not regulate shelter care home and detention homes in a manner that is inconsistent with this Act. *This Act* is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State." (Emphasis added.) 55 ILCS 75/9.2 (West 2018).

The notion that the legislature had to "mention (specifically or at all) the detention of minors" is a non-starter. In using the term "this Act" in section 9.2, the legislature made crystal clear that the entire Detention Act, including sections 9.2 and 4, is an express exercise of its constitutional power to limit the county's concurrent home rule authority to regulate the admission and placement of minors into county juvenile detention facilities. See *Palm*, 2013 IL 110515, ¶¶ 35-36.

¶ 39    A plain reading of the Juvenile Court Act and the Detention Act makes clear that the legislature has enacted a comprehensive scheme for the treatment of minors 10 years of age and older who are under the jurisdiction of the Juvenile Court Act that require, or may require, detention in a secure facility. In doing so, the legislature exercised its power in article VII, section 6(i), and specifically expressed its intention to limit Cook County's concurrent home rule authority to regulate the placement and detention of minors under the jurisdiction of the

Juvenile Court Act in the county juvenile detention center. Therefore, we find that Cook County Code of Ordinances § 46-4 (eff. Sept. 12, 2018) is an invalid exercise of its home rule authority.

¶ 40                                              CONCLUSION

¶ 41     For all of the reasons stated herein, we affirm the denial of respondent's *habeas corpus* petition.

¶ 42     Affirmed.

¶ 43     JUSTICE HYMAN, dissenting:

¶ 44     The majority's decision dangerously erodes the home rule provisions of the Illinois Constitution and the interpretation of those provisions by our supreme court. The majority repeatedly assures us that the State's preemption of Cook County's authority to regulate the population of its juvenile detention centers is "clear" (see *supra* ¶¶ 25, 35, 37, 38, 39); yet, the path it took to achieve so-called clarity meanders through a host of unrelated statutory provisions in the Detention Act and cobbles together legislative purpose unmoored from any express statutory text.

¶ 45     By implicitly demanding a "special[ ] grant" of authority from the General Assembly to Cook County, the majority has explicitly done the precise opposite of what our supreme court requires for the triggering of preemption. See *supra* ¶ 34. The majority finds the Juvenile Court Act to be "comprehensive" and in conflict with the Cook County ordinance (*supra* ¶ 39), considerations our supreme court has repeatedly dismissed as irrelevant on the question of finding preemption for home rule purposes. Put simply, the Juvenile Court Act contains no *specific* revocation of authority from Cook County to regulate which minors it incarcerates. Ill. Const. 1970, art. VII, § 6(i) ("Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not *specifically* limit the concurrent exercise or *specifically* declare the State's exercise to be exclusive." (Emphases added.)). That should be the end of it.

¶ 46     In my view, the outcome turns on the meaning of one phrase in the Juvenile Court Act, "authorized juvenile detention facility." According to the Cook County Board, the JTDC does not qualify as an "authorized juvenile detention facility" for children under 13 years of age. See Cook County Code of Ordinances § 46-4(b) (eff. Sept. 12, 2018) ("An individual under 13 years of age shall not be admitted, kept, detained, or committed to the *** Juvenile Temporary Detention Center."). Mathias H. was 12 when the circuit court judge ordered him detained in the JTDC, having found section 46-4(b) both unlawful and unwise. We are not asked to decide the merits of incarcerating Mathias H. and children like him; we only decide *who* gets to make that choice. Because the Illinois General Assembly has not ventured to define "authorized juvenile detention facility," the home rule powers permit the Cook County Board to decide that definition, so I respectfully dissent.

¶ 47                                                Waiver

¶ 48     The majority focuses on the merits of Mathias H.'s arguments, and I will as well. But we should not overlook the State's argument—that the Cook County ordinance constitutes an

unlawful exercise of authority—has been made for the first time on appeal. The majority describes the State's position before the circuit court as taking "no position," but the situation is not so innocuous—the State affirmatively took the opposite position in the trial court from the position it takes on appeal. At Mathias H.'s detention hearing, the state's attorney's office affirmatively agreed with Mathias H. that the ordinance was valid and controlling. At the hearing on Mathias H.'s *habeas* petition, the assistant state's attorney, appearing in a different juvenile's case raising a similar issue, took "no position" on the ordinance's validity. Allowing the State to take the opposite position now seems entirely unfair.

¶ 49     In response, the State deems its capacity as the appellee to permit defending the trial court's judgment on any basis appearing in the record, which sets out the general rule. *People v. Denson*, 2014 IL 116231, ¶ 17. But, an equally well-settled rule, the principle of waiver, "applies to the State as well as the defendant in a criminal case." *People v. Exson*, 384 Ill. App. 3d 794, 803 (2008) (citing *People v. Holloway*, 86 Ill. 2d 78, 91 (1981)). This principle holds particularly true where the waiver "is not simply a matter of failure to object" but is instead the affirmative representation of a contrary position earlier in the proceeding. See *id.*; see also *Denson*, 2014 IL 116231, ¶ 17 (appellee cannot attempt to "advance a theory or argument on appeal that is inconsistent with the position taken below").

¶ 50     The record conclusively establishes the State's change of position. At the hearing on the State's petition to revoke electronic monitoring, during a discussion of the possibility of Mathias H.'s custody, the State said:

> "With respect to the minor's custodial status, Judge, it is the position of the State's Attorney's Office that, as I mentioned on the previous court date, the Cook County Board did pass an ordinance changing the law for custodial status of a minor of [Mathias H.]'s age. It is the position of the State's Attorney's Office that *that law controls this case*." (Emphasis added.)

At the hearing on Mathias H.'s *habeas* petition the assistant state's attorney assigned to Mathias H.'s case did not appear, and an assistant state's attorney from a different courtroom indicated that "the State is not taking a position with regard to the *habeas* petitions." In other words, the only position taken by the State declares that the ordinance controls.

¶ 51     This sudden about-face raises serious fairness concerns. I would hope the State will not repeat what I consider a maneuver that undermines the adversarial process. By initially embracing the ordinance and then taking no position, the State made a commitment, a knowing choice, and should not on appeal raise an argument waived before the trial court, especially because the State has proffered no reason for its fickleness.

¶ 52     But, the majority has considered the issue despite its mootness as a matter of public concern warranting an "authoritative determination." *Supra* ¶ 19. For similar reasons, I acquiesce in the majority's decision to consider the merits despite the State's waiver. See *People v. Farmer*, 165 Ill. 2d 194, 200 (1995) ("the goals of obtaining a just result and maintaining a sound body of precedent may sometimes override considerations of waiver"). That said, I disagree with the majority on the merits.

¶ 53                                    Validity of the Ordinance

¶ 54     The majority correctly acknowledges the broad scope of the Cook County Board's legislative power, but it bears repeating. Under the Illinois Constitution, "[h]ome rule units

- 11 -

may exercise and perform concurrently with the State *any* power or function of a home rule unit to the extent that the General Assembly by law does not *specifically* limit the concurrent exercise or *specifically* declare the State's exercise to be exclusive." (Emphases added.) Ill. Const. 1970, art. VII, § 6(i). Our duty to interpret the law to give home rule units the broadest authority possible comes directly from the constitutional text: "Powers and functions of home rule units shall be construed liberally." *Id.* § 6(m).

¶ 55    The Illinois Supreme Court has been emphatic that only in the rarest of circumstances should we read state statutes to preempt home rule jurisdictions from adopting their own legislation. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 34 (" '[I]f the constitutional design is to be respected, the courts should step in to compensate for legislative inaction or oversight *only by the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies*.' " (Emphasis in original and internal quotation marks omitted.) (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 190 (1992))). Accordingly, we are forbidden by the Illinois Constitution from reading state preemption of home rule authority into a statutory scheme absent "an express statement to that effect." *Id.* ¶ 31.

¶ 56                          The Detention Act Is Inapplicable

¶ 57    The majority finds this "express statement" not in the Juvenile Court Act but in the Detention Act (55 ILCS 75/9.2 (West 2018)). *Supra* ¶ 38. I cannot agree with the majority's reliance on the Detention Act for two reasons. First, by its plain terms the Detention Act governs only the internal administration of detention facilities, not the broader determination about which minors should be detained. Second, to the extent that the Detention Act limits the County's discretion to determine the admissibility of minors to its detention facilities, it does so only by referring back to the Juvenile Court Act, which is ambiguous.

¶ 58    The majority focuses on the Detention Act's preemption provision: "A county, including a home rule county, may not regulate shelter care homes and detention homes in a manner that is inconsistent with this Act." 55 ILCS 75/9.2 (West 2018). The majority finds this a "crystal clear" statement that a home rule county has no authority to make any decisions regarding the "admission and placement" of juveniles in detention facilities. *Supra* ¶ 38. But by reading section 9.2 in this way, the majority disregards the rest of the Detention Act. Doing so also contradicts the well-established maxim of statutory construction that we are to construe related statutory provisions together to properly understand legislative intent. *E.g.*, *People v. Maggette*, 195 Ill. 2d 336, 348 (2001) ("A court must consider the entire statute and interpret each of its relevant parts together."). As a result, what does "regulate" mean in section 9.2? The other provisions of the Detention Act provide the answer.

¶ 59    The Detention Act concerns the creation, operation, and maintenance of detention facilities. The Detention Act permits a county board to "locate, purchase, erect, lease, or otherwise provide and establish, support and maintain a detention home" for minors. 55 ILCS 75/1(a) (West 2018). The Detention Act also allows counties to levy taxes to pay for detention facilities. *Id.* It requires counties to maintain detention facilities in compliance with minimum standards set out by the Illinois Department of Juvenile Justice (DJJ). *Id.* § 2. It arranges for the appointment of an administrator and "all other necessary personnel" for the administration of the JTDC. *Id.* § 3. Finally, the Detention Act includes additional administrative matters like education of minors in JTDC custody (*id.* § 2.1), the administrator's record keeping

- 12 -

responsibilities (*id.* § 4), and the mechanism by which the administrator makes purchases under the Detention Act (*id.* § 3.1).

¶ 60 The text of the Detention Act shows that it only preempts a county's internal administration of detention facilities, but if there were any doubt as to the limits of the Detention Act's preemption language, the legislative history resolves it. Speaking about the bill that amended the Detention Act to affix preemption language, Representative Cross explained that "all this Bill would do" is "transfer control of the Cook County Juvenile Detention Facility to the chief judge's office." 95th Ill. Gen. Assem., House Proceedings, Mar. 28, 2007, at 47 (statements of Representative Cross). According to Representative Cross, sponsors of the bill thought "the county board president's office wasn't necessarily handling the juvenile detention center in the proper way that some suggested, maybe there was patronage going on." *Id.* at 48. The General Assembly worried about mismanagement of the JTDC, not the policy behind who ends up there.

¶ 61 The majority interprets the Detention Act in a manner that turns home rule doctrine on its head, looking at section 1(a) of the Detention Act and focusing on what authority the Act "specially grants" to the county board. *Supra* ¶ 34. The majority appears to find the lack of a special grant of authority to determine the age of admissible minors to the JTDC to be "an express exercise" of the General Assembly's power to limit home rule authority. *Supra* ¶ 38. But, it cannot be true, as the trial court found, that "the failure to delegate to county boards authority over admission or detention or placement of minors into detention homes" proves these decisions should be kept beyond the purview of the Cook County Board. This analysis gets the concept of home rule backwards. Home rule jurisdictions do not depend on the State for a *grant* of authority. Rather, as long as the General Assembly has not specifically *removed* a home rule unit's authority to legislate in a particular area, that unit can create its own laws as it sees fit. *Palm*, 2013 IL 110505, ¶ 32.

¶ 62 And this leads me to the final piece of statutory evidence that the Detention Act was not meant to preempt Cook County from determining which children to incarcerate. The majority says that "[t]he notion that the legislature had to 'mention (specifically or at all) the detention of minors' is a non-starter." *Supra* ¶ 38. A non-starter? On the notion that the legislature had to specifically mention the detention of minors rests the entire foundation of the home rule doctrine. *Palm*, 2013 IL 110505, ¶ 34. And there is just one specific mention of the admission of minors to the JTDC anywhere in the Detention Act. In one sentence, the Detention Act says: "A court acting under the Juvenile Court Act of 1987, may, except as otherwise provided in that Act, place any minor *coming within the terms of that Act* in home detention or a shelter care or detention home established pursuant to this Act." (Emphasis added.) 55 ILCS 75/1.2 (West 2018). The language can only mean that we must determine whether the " 'terms of that [Juvenile Detention] Act' " (*supra* ¶ 35), not the Detention Act, preempt Cook County from making its own judgment about which minors to incarcerate.

¶ 63 For all of its discussion of the Detention Act, the majority ultimately acknowledges that admission of minors to a county detention facility rightly belongs "under the provisions of the Juvenile Court Act." *Supra* ¶ 35. The majority then says that "[c]learly" this must mean that Cook County judges may act "unrestricted by any home rule ordinances." *Supra* ¶ 35. But, nothing in the Juvenile Court Act *specifically* limits Cook County's ability to determine who is admitted to the JTDC, try as one might to find it.

¶ 64                    The Juvenile Court Act Is Silent

¶ 65    The trial court and the parties have framed their respective positions in terms of section 5-410 of the Juvenile Court Act. That section provides, in relevant part: "Any minor 10 years of age or older arrested pursuant to this Act where there is probable cause to believe that the minor is a delinquent minor and that (i) secure custody is a matter of immediate and urgent necessity *** may be kept or detained in an authorized juvenile detention facility." 705 ILCS 405/5-410(2)(a) (West 2018). According to the State, because section 5-410 permits the detention of minors 10 years and older, any ordinance that prohibits the detention of those minors must be invalid. This is an unconvincing conflict because section 5-410 only applies to temporary police custody following a minor's arrest. *In re Randall M.*, 231 Ill. 2d 122, 129 (2008) ("Section 5-410 appears in part 4 of the Juvenile Court Act, which governs the 'arrest and custody' of minors. [Section 5-410] does not govern *or even speak to* the trial court at the detention hearings. Instead, it governs what the *police* may do with a minor between the time of his [or her] arrest and the time he [or she] is first brought before the court." (Emphases added.)). Thus, the only section of the Juvenile Court Act that gives affirmative (though limited) discretion to anyone to incarcerate minors over 10 gives that discretion to the police, not the court.

¶ 66    Indeed, section 5-501 of the Juvenile Court Act governs the trial court's discretion in detention hearings. This section allows the trial court to order the minor "kept or detained in a facility authorized for juvenile detention" in cases of "immediate and urgent necessity," where reasonable cause exists to believe that a minor is a delinquent minor. 705 ILCS 405/5-501(2)-(3) (West 2018). Section 5-501 makes no express mention of an age range for incarceration other than to ensure that "[m]inors 12 years of age or older [are] kept separate from confined adults." *Id.* § 5-501(4)(a)-(c). So, section 5-501 contains no express authority for the incarceration of minors between the ages of 10 and 12. That alone defeats the State's preemption argument. See *Palm*, 2013 IL 110505, ¶ 32 ("To restrict the concurrent exercise of home rule power, the General Assembly must enact a law *specifically* stating home rule authority is limited." (Emphasis in original.)).

¶ 67    But, suppose one took the broadest possible reading of section 5-501. Under the Juvenile Court Act, a "minor" is anyone under 21. See 705 ILCS 405/5-105(10) (West 2018). A conscientious reader of section 5-501 could still perceive a conflict between the ordinance and the Juvenile Court Act because the Juvenile Court Act allows for the detention of anyone under 21 and the ordinance restricts that age group to minors older than 12. Assuming this conflict is enough to suggest the invalidity of Cook County's home rule authority in this area (it is not (see *Palm*, 2013 IL 110505, ¶ 42)), there is yet another problem with the majority's reasoning. Whether one looks at section 5-410 or section 5-501, the Juvenile Court Act permits holding minors in custody in "an *authorized* detention facility" (emphasis added) (705 ILCS 405/5-410(2)(a) (West 2018)) or in a "facility *authorized* for juvenile detention" (emphasis added) (*id.* § 5-501(3)). The General Assembly has made no effort to define "authorized" for the purposes of the Juvenile Court Act. Absent express legislative action to limit a county's ability to determine which detention facilities constitute "authorized" facilities and for whom they are "authorized," Cook County may make its own determinations.

¶ 68    The majority's last refuge proclaims that the Juvenile Court Act represents a comprehensive scheme by which the General Assembly sought to regulate the criminal prosecution and detention of minors. *Supra* ¶ 39. This is true, but as our supreme court has

- 14 -

emphasized, "[c]omprehensive legislation that conflicts with an ordinance is insufficient to limit or restrict home rule authority." *Palm*, 2013 IL 110505, ¶ 43. The Juvenile Court Act is undoubtedly comprehensive, but that the General Assembly and the Cook County Board have attempted to regulate the same subject matter in a manner that appears inconsistent is not enough to justify a finding of preemption. *Id.* ¶ 42. Absent *express* statutory language in the Juvenile Court Act limiting the Cook County Board's ability to legislate, it does not matter whether the Juvenile Court Act is comprehensive or that the Juvenile Court Act and the ordinance ostensibly conflict. Cook County may disagree with the General Assembly as long as the General Assembly has not *expressly* prevented it from doing so.

¶ 69　　The majority's decision treats Cook County as a non-home-rule unit. Municipalities that lack home rule authority *do* rely on the General Assembly or the Illinois Constitution for an independent grant of authority. See *Scadron*, 153 Ill. 2d at 174; see also *Tri-Power Resources, Inc. v. City of Carlyle*, 2012 IL App (5th) 110075, ¶ 10 (citing *Janis v. Graham*, 408 Ill. App. 3d 898, 902 (2011)). Then, even if the General Assembly grants a non-home-rule unit authority to enact its own legislation, the municipality's legislation cannot conflict with state law. *Tri-Power*, 2012 IL App (5th) 110075, ¶ 10. The majority has imposed these requirements on Cook County, inverting the expansive authority granted to it by the Illinois Constitution.

¶ 70　　　　　　　Distinction Between Pretrial and Posttrial Detention

¶ 71　　Finally, the majority concedes that the administration of county detention centers "pertains to county government and affairs" but, nevertheless, appears to imply that the State possesses complete authority to administer juvenile detention. *Supra* ¶¶ 29-30. Here, it is critical to distinguish between pretrial detention and posttrial detention. Unless and until a minor is ordered incarcerated in the DJJ, the matter of his or her detention remains an entirely local affair. Actually, the DJJ expressly disavows any control over county detention centers, saying on its website: "Illinois county juvenile detention centers do NOT fall under the jurisdiction of the State of Illinois Department of Juvenile Justice." *IDJJ Youth Centers*, Illinois Department of Juvenile Justice, http://www.illinois.gov/idjj/pages/facilities.aspx (last visited Oct. 24, 2019) [https://perma.cc/6RAC-MWZ4]. For a number of practical reasons, a county should have more control over the scope of pretrial detention. While a statewide interest in preventing crime and providing minors with preventative services certainly exists, each locality may confront certain types of crimes with differing prevalence, each locality may have different amounts of funding for local noncustodial services, and each locality may have differing prosecutorial and incarceration priorities depending on the attitudes of the local state's attorney or judiciary. Local governing units, to the extent they have home rule powers, better sense the pulse of these local concerns.

¶ 72　　Only after the court formally finds that the State has proven a minor delinquent beyond a reasonable doubt does the balance of interests shift in favor of the State. The majority cites *In re Presley*, 47 Ill. 2d 50, 56 (1970), for the proposition that the State has an interest as *parens patriae* to protect the lives of delinquent minors. See *supra* ¶ 29. That may be true but has no bearing on the relationship between the State's role and the county's role *before* a minor has been found delinquent. This division between preadjudication and postadjudication responsibilities heeds the historical formulation of *parens patriae* as an equitable doctrine vesting the government with the authority to act "on the behalf of those unable to care for themselves." *In re S.G.*, 175 Ill. 2d 471, 488 (1997). The State's interests as *parens patriae*

sharply diminish before a formal adjudication of delinquency because, until adjudication, minors are presumed innocent and are not wards of the court or the State. See 705 ILCS 405/5-750(1) (West 2018) (minor cannot be committed to DJJ unless he or she is adjudged a ward of court).

¶ 73 The question of Mathias H.'s detention arose before he was adjudicated delinquent, still cloaked with the presumption of innocence and still not under the care of the State, either as a formal matter or under the State's obligations as *parens patriae*. Any determination about the necessity and propriety of incarcerating Mathias H. before his trial comes well within Cook County's purview.

¶ 74 The Illinois Constitution leaves restrictions on home rule authority to the General Assembly. *Palm*, 2013 IL 110505, ¶ 34 ("The Illinois approach places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line." (Internal quotation marks omitted.)). Unless and until the General Assembly limits the authority of home rule jurisdictions to make preadjudication incarceration determinations for minors of a certain age, Cook County possesses the authority to decide that for itself.